This action was instituted by the State of North Carolina on the relation of Dan C. Boney, Insurance Commissioner, against the Central Mutual Insurance Company of Chicago, an insolvent corporation, for the purpose of liquidating the deposit made with the Insurance Commissioner by the defendant, as required by the statute for the privilege of doing business within the State.
Paul F. Smith was duly appointed receiver and the Home Insurance Agency, Inc., filed with him its claim. The receiver disallowed the claim and reported in connection therewith his reasons therefor as follows: "(1) No valid contract existed between the Central Mutual Insurance Company of Chicago and Thomas-Howard Company. (2) Adequate proof of the amounts of items composing said claim has not been submitted. The claimant is not entitled to share in the funds of this trust for the reasons that: (a) The liability of the insured was extinguished by payment; (b) claimant is a pure volunteer; (c) claimant is not subrogated to Thomas-Howard Company."
The claimant excepted and appealed to the Superior Court.
When the appeal came on to be heard below the claim was submitted upon a statement of facts agreed, from which it appears that:
The Thomas-Howard Company placed an order for automobile liability insurance with the Home Insurance Agency as insurance brokers. The agency placed the application with defendant Insurance Company and it issued its binder and policy. Thereupon the agency notified the Thomas-Howard Company that it was protected and rendered a statement of the premium due. The Thomas-Howard Company forwarded the premium to the agency and it in turn sent the premium to the defendant Insurance Company. By virtue of the policy defendant contracted to "investigate all accidents and defend all suits and actions brought against Thomas-Howard Company based upon any injury to person or damage to property as set out . . . to pay all such personal and property damages within the limits of the policy . . . and save harmless the insured from all costs, attorneys' fees and other expenses which should be incurred, growing out of any such accident or accidents." A dispute then arose between the agency and the defendant as to the correct premium which should have been paid and the policy was returned by the agent to the Insurance Company for correction of an alleged error in the premium. While this controversy was pending certain automobile accidents involving the Thomas-Howard Company *Page 565 
occurred, and the insured called on the Home Insurance Agency to assume the defense of these suits. The agency then notified the defendant Insurance Company to abide by the terms of its policy by defending the suits, but the defendant denied that it was insurer and refused. Accordingly, the agency, upon demand of the insured, and while "acting in good faith upon a bonafide belief that in view of its representation of coverage . . . it was liable to Thomas-Howard Company if it did not defend the suits," proceeded to defend the suits and to settle them. Thereupon the agency took from the insured an assignment in writing of its rights against defendant and proceeded to sue defendant. Pending this action a receiver for defendant Insurance Company was appointed. The agency then submitted to a judgment of voluntary nonsuit in its pending action and filed its claim with the receiver, who disallowed the claim for the reasons set out in his report.
The court below sustained the ruling of the receiver and disallowed the claim of the Home Insurance Agency and said claimant excepted and appealed.
While the Insurance Company denied liability and declined to investigate the claims against the insured, or to defend the actions instituted thereon, and the receiver disallowed the claim upon the contention that no valid contract existed between the Central Mutual Insurance Company of Chicago and Thomas-Howard Company, it is now agreed that there was a valid and subsisting binder and policy of insurance issued by the defendant Insurance Company. It is also agreed as to the amounts paid out by the agency in behalf of the insured in settlement of claims against it, which were covered by the Central Mutual policy. It then appears that two of the reasons assigned by the receiver for disallowing the claim no longer exist.
Only one other question remains for determination. Was claimant such a pure volunteer as to be deprived of the right of subrogation? If so, its payment of the claims against the insured extinguished the liability both as against the insured and the insurance company. If not, the claimant is entitled to reimbursement from the insurance company under the doctrine of subrogation and by reason of the assignment of the claims to it.
Under the agreed statement of facts ". . . when Central Mutual agreed to issue its policy as aforesaid and had bound the risk the Home Insurance Agency advised Thomas-Howard Company that it had secured *Page 566 
a policy in Central Mutual and further advised Thomas-Howard Company that it was fully covered in accordance with its order, and Thomas-Howard paid Home Insurance Agency the premium which Home Insurance Agency had advised was due and Home Insurance Agency forwarded premium to Central Mutual." Had the Home Insurance Agency merely informed Thomas-Howard that the defendant had issued a policy in its favor and nothing more, it could be argued that its duty as broker there ended. However, this is not the case. Claimant agency affirmatively assured Thomas-Howard Company that it was "fully covered in accordance with its order," and Thomas-Howard, relying upon this advice, paid the demanded premium for the protection it had ordered. "A broker who fails to perform his duties faithfully becomes liable to his principal for damages suffered as a consequence of his breach of duty. . . . Furthermore, the broker is liable for failure to procure or keep up insurance on the principal's property where he is under a duty to do so." 8 Am. Jur., "Brokers," sec. 98. In 18 A.L.R., at page 1214, the general rule applicable to brokers and agents is stated as follows: ". . . a broker or agent who, with a view to compensation for his services, undertakes to procure insurance on the property of another, and who fails to do so, will be held liable for any damage resulting therefrom." Elam v. Realty Co.,182 N.C. 599, is there correctly cited as one of the cases supporting this rule. In the instant case the broker not only undertook to secure for Thomas-Howard a particular, specified insurance coverage, but Thomas-Howard Company relied upon this assurance, paid the named premium, and made no further negotiation with respect to insurance coverage.
By its own conduct and representations in the course of dealing as broker the Home Insurance Agency was estopped from denying that Thomas-Howard Company was protected by the insurance ordered. "Either the principal or the broker may be estopped by his representations or conduct from repudiating a given transaction between the parties." 9 C. J., "Brokers," sec. 43. As Thomas-Howard Company had not dealt with defendant company but had dealt solely with the Home Insurance Agency and looked to it exclusively for its protection, it naturally turned to that agency when the accident claims were filed. The defendant company then denied the existence of its contract and all liability thereunder. This left the insured without protection contemplated by the policy at a time when it was most needed, except for the intervention of the claimant on the demand of the insured. Even if it be conceded that there was no legal liability resting upon the Home Insurance Agency to intervene and investigate said claims and defend said suits, it was morally bound to do so by reason of its assurance of coverage and the failure of the company with which it had placed the policy to comply with its contract. *Page 567 
The claimant agency, therefore, upon discovering that the defendant did not intend to discharge its contract and realizing that Thomas-Howard had relied upon the agency's representation that defendant had contracted to protect the insured from loss, assumed the obligation of defendant Insurance Company. This was done upon the express demand and request of the insured. It is agreed "that the payments made by Home Insurance Agency in settlement of the suits were wise settlements and resulted in substantial savings; that in all probability verdicts would have been rendered in each case for very much larger amounts if the suits had not been defended and settled."
The claimant now seeks protection and reimbursement under the doctrine of subrogation. Davison v. Gregory, 132 N.C. 389; Moring v. Privott,146 N.C. 558; Bank v. Bank, 158 N.C. 238. However, "the doctrine of subrogation is not applied for the mere stranger or volunteer, who has paid the debt of another, without any assignment or agreement for subrogation, being under no legal obligation to make the payment, and not being compelled to do so for the preservation of any rights or property of his own." Sheldon, The Law of Subrogation, 2nd Ed., sec. 240. Accordingly, we must determine whether the agency comes within the protection of the doctrine. First, was the agency a volunteer; and, second, if it was a volunteer, has it by assignment brought itself within the protection of the doctrine?
A payment made under compulsion is not voluntary; payment made under a moral obligation, or in ignorance of the real state of facts, or under an erroneous impression of one's legal duty, is not a voluntary payment. 60 C. J., "Subrogation," sec. 27. "If he bona fide claims an interest he is not a mere volunteer, and may be subrogated, but he must show that he had or supposed he had some interest to be protected." Quoted with approval byWalker, J., in Publishing Co. v. Barber, 165 N.C. 478, 485, from Sheldon, The Law of Subrogation. "He was not an intermeddler, if he acted in good faith, nor was it a mere act of `unauthorized forwardness' beyond his known obligations and duty. Sanders v. Sanders, 17 N.C. 262." Publishing Co. v.Barber, supra.
"Cases in our own reports illustrate the doctrine that though the party who makes the payment may, in fact, have no real or valid legal interest to protect, he may yet be subrogated when he acts in good faith, in the belief that he had such interest." Publishing Co. v. Barber, supra. In this connection it is agreed ". . . that Home Insurance Agency, acting in good faith upon a bona fide belief that in view of its representation of coverage to Thomas-Howard Company, it was liable in damages to Thomas-Howard Company if it did not defend, and further in view of the flat refusal of Central Mutual to pay or defend and the denial by the Central Mutual that it had ever issued a contract of insurance, and further in view of the fact that the suits were pending and *Page 568 
something had to be immediately done to minimize the losses," paid the smaller claims, employed counsel to defend both suits, and finally made a reasonable and satisfactory settlement of the claims.
It is sufficient to invoke the doctrine of subrogation if (1) The obligation of another is paid; (2) "for the purpose of protecting some real or supposed right or interest of his own." 60 C. J., "Subrogation," sec. 113.
"In the law of subrogation, the distinction between a mere volunteer or intermeddler and one who pays in the protection of a right or interest, believed to be good, though it may turn out afterwards to be an invalid one, is well marked by the authorities." Publishing Co. v. Barber, supra. The doctrine of subrogation originated in equity; "it is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity and good conscience, ought to pay." 60 C. J., "Subrogation," secs. 3, 5. It is because of this equitable origin and basis that subrogation "will not be decreed in favor of a mere volunteer, who, without any duty, moral or otherwise, pays the debt of another; for such a person can establish no equity, and can obtain the right of substitution by contract only." 25 R. C. L., "Subrogation," sec. 11. Likewise, it is because of the sound basis of the doctrine in equity and good conscience that the term "volunteer" as an exception or limitation should be narrowly and strictly interpreted to the end that the doctrine of subrogation may be expansively and liberally applied. "It (the doctrine of subrogation) is a remedy which is highly favored and is not so restricted in its application as formerly. The courts are inclined rather to extend than to restrict the principle so that although formerly the right was limited to transactions between principals and sureties, now it is broad and expansive and has a very liberal application. It is no longer confined to cases of suretyship, but the doctrine has been steadily growing and expanding in importance, and becoming more general in its application to various subjects and classes of persons, the principle being modified to meet the circumstances of cases as they have arisen." 60 C. J., "Subrogation," sec. 17. Conceding without deciding that the Home Insurance Agency was not legally obligated to assume the defense of the claims filed against Thomas-Howard Company, it is admitted that the agency was "acting in good faith upon a bona fide belief . . . it was liable to Thomas-Howard Company if it did not defend the suits," and that it accordingly settled the claims. This is sufficient to bring the agency under the protection of the doctrine of subrogation in asserting its claim.
Furthermore, the agency paid the claims against the insured at the request and upon the demand of the insured. Even if claimant had been a mere volunteer or intermeddler under the doctrine of subrogation, the *Page 569 
assignment by the Thomas-Howard Company to the claimant of its rights growing out of the policy worked a valid transfer to claimant of the full right to be reimbursed by defendant under the policy. "The general test of assignability has been given, as to whether the claim would survive to or against the personal representative of the decedent. As a general rule, all ordinary business contracts are assignable, and actions for the breach may be in the name of the assignee, unless such assignment is prohibited by law, or would be in contravention of some principle of public policy, or the performance of the contract involved the element of personal skill or credit." McIntosh, N.C. Prac. and Proc., p. 199, and cases cited. "Volunteers, in the absence of some special circumstance upon which they can base their claims, can obtain the equal right to be subrogated only by virtue of an agreement, express or implied, or by request from the debtor to pay, which is in effect an debt." Publishing Co. v. Barber, supra. The claimant not only paid in good faith under its representation that the insured was fully covered, but it took an assignment from the insured and is by reason thereof entitled to maintain its action.
We conclude that there was error in the judgment below and that the same should be reversed to the end that the Home Insurance Agency claim may be duly allowed.
Reversed.