KENNETH L. JOHNSON, TRADING AS CAROLINA BEACH PIER
v. GEORGE TENUTA & COMPANY

No. 715SC587

(Filed 12 January 1972)

1. Insurance § 2— negligent failure of agent to procure insurance

Where an insurance agent or broker undertakes to procure for another a policy of insurance affording protection against a designated risk, the law imposes upon him the duty, in the exercise of reasonable care, to perform the duty he has assumed, and within the amount of the proposed policy, he may be held liable for the loss properly attributed to his negligent default.

Johnson v. Tenuta & Co.

2. **Insurance § 2— agent's breach of contract to procure insurance — insufficiency of evidence**

   Plaintiff's evidence was insufficient to show that defendant insurance agent had contracted to procure for plaintiff "complete and full insurance on plaintiff's pier" as alleged in the complaint, where it tended to show only that plaintiff took over from the previous owners the existing insurance policy which defendant had procured for them, sending to defendant through a real estate agent a check for the prorata portion accruing from the date plaintiff acquired title to the pier, and that defendant promised, without consideration, to get a copy of the existing policy for plaintiff and told plaintiff not to worry about it because he was "fully covered."

3. **Insurance § 2— agent's negligence in failing to procure insurance — absence of contract to procure insurance**

   Defendant insurance agent could not be found negligent in failing to procure for plaintiff complete insurance protection against the particular risk which resulted in plaintiff's loss where defendant had not contracted to procure such insurance for plaintiff.

4. **Appeal and Error § 4—theory of trial in lower court — different theory on appeal**

   Where a cause has been tried on one theory in the lower court, appellant will not be permitted to urge a different theory on appeal.

APPEAL by plaintiff from *Fountain, Judge,* 15 March 1971 Session of Superior Court held in NEW HANOVER County.

Civil action to recover $7,500.00 damages which plaintiff alleged he sustained because of the failure of defendant, an insurance agent, to procure insurance on plaintiff's fishing pier. In his complaint plaintiff alleged that in February 1969, "the defendant agreed with the plaintiff to procure complete and full insurance coverage on the plaintiff's pier," and that defendant assured plaintiff that defendant "had procured such insurance which was in full force and effect and would continue in full force and effect until December 12, 1969, whereupon the plaintiff delivered to the defendant the sum of $2,190.00 to pay the premium on the insurance which the defendant said he had procured." The complaint also contained allegations that in November 1969 plaintiff's pier was severely damaged by a windstorm; that the cost of repairing the damage exceeded $7,500.00; that because of defendant's failure to procure the insurance which defendant agreed to procure and because of defendant's repeated assurances to plaintiff that defendant had procured such insurance, there was no insurance on plaintiff's pier when the storm occurred; and that plaintiff was therefore

damaged in the sum of $7,500.00, which sum plaintiff alleged he was entitled to recover of defendant. Defendant denied the material allegations of the complaint.

Upon the trial plaintiff testified in substance, except where quoted, as follows: Plaintiff bought the pier from T. J. Jackson and wife for the price of $80,000.00. The sale was closed in February 1969 in the office of Kepley Real Estate Company, the real estate agency which represented the sellers. At that time there was insurance, which had been purchased by Mr. Jackson, already in force on the pier. Plaintiff sent his check by Kepley Real Estate Company to defendant to pay his part of the annual premium. The check, dated 8 February 1969 in the amount of $2,190.00, bore on its face the notation "For Pier Insurance till 12-12-69." It was paid by plaintiff's bank on 13 February 1969. Plaintiff testified:

> "As to whether or not I asked Mr. Kepley what the coverage was and what it covered, well Mr. Kepley just told me that he had had insurance with Mr. Tenuta for several years and as far as he knew he was reliable and I should have insisted on the policy, I guess, before I paid the money but I didn't. He was recommended to me. Mr. Kepley had done everything he said he would do during the transaction, which was a pretty good amount of money, and I didn't have any reason to question him, so I just took it for human nature, I guess. A little faith in human nature. At that time I had never seen Mr. Tenuta. Certainly never talked with him by telephone and never communicated with him by letter or other communication of any kind. All I knew about Mr. Tenuta was the name given to me by Mr. Kepley, the real estate agent who closed the transaction for the sellers from whom I purchased the pier."

Plaintiff's first contact with defendant was in a telephone call from plaintiff to defendant in which plaintiff asked for his policy. Plaintiff fixed the date of this telephone call variously as "March, March or April 1st, in the Spring of '69" and as "about June." Plaintiff testified:

> "[H]e told me that he would get me the policy and not to worry about it because I was fully covered. He did not discuss with me what I was covered for or against. He said I was covered and not to worry about it."

Plaintiff's next contact with defendant was in July 1969, when plaintiff inquired about liability insurance coverage for the pier and defendant undertook to obtain some figures on rates for such insurance. In this conversation plaintiff also asked about the policy "to cover what I paid him for" and defendant said "not to worry about it, I was covered but he would get me the policy." Plaintiff testified he never got the policy and had no further contact with defendant until after the storm. Plaintiff also introduced evidence as to the nature and extent of the storm damage to his pier and the cost of repairing the same. At the close of plaintiff's evidence, defendant's motion for a directed verdict under Rule 50(a) was denied.

Defendant then introduced evidence and testified that he had first placed insurance on the pier in January 1968, when he had placed insurance for the former owners to provide coverage against the hazards of fire, windstorm, and wave wash in the aggregate amount of $25,000.00; that this coverage was required by the Small Business Administration, which held a mortgage on the property; that this was the same policy which was in effect at the time the pier was damaged in November 1969; that the annual premium, including tax, was approximately $2,670.00; that he received a check from Mr. Jackson, the former owner, for his prorated portion of the annual premium for coverage from December 1968, and had received plaintiff's check from the real estate agency for plaintiff's part of the premium; that he had had no transactions with plaintiff personally in February 1969. Defendant also testified that plaintiff had later called to introduce himself and to talk about public liability insurance, but testified that plaintiff had never asked him to acquire any additional insurance on the pier.

Defendant introduced in evidence a copy of the insurance policy, which was effective for the period from 12 December 1968 to 12 December 1969. As originally written the policy named Mr. and Mrs. Jackson, the former owners, as the persons insured. It was amended by endorsement to show the plaintiff as the person insured. This policy provided insurance in the total amount of $25,000.00, distributed over the pier, the tackle shop on the pier, and the contents of the tackle shop. The amount of insurance on the pier, which was the only thing damaged in the storm, was $17,265.00. The policy contained an 80% co-insurance clause and a clause limiting the insurance

company's liability to its proportionate part of the amount of each loss after deducting $2,500.00. Defendant also introduced evidence to show that the value of plaintiff's pier was $70,-000.00, and by reason of the 80% co-insurance clause and the $2,500.00 deductible clause, no payments had been made under the policy by reason of the loss which plaintiff sustained when the storm damaged his pier in November 1969.

At the close of all the evidence defendant again moved for a directed verdict pursuant to Rule 50 (a) of the Rules of Civil Procedure, which motion was allowed. From judgment allowing defendant's motion and dismissing plaintiff's action, plaintiff appealed.

*Smith & Spivey by Jerry L. Spivey for plaintiff appellant.*

*Marshall, Williams, Gorham & Brawley by Alan A. Marshall and A. Dumay Gorham, Jr., for defendant appellee.*

PARKER, Judge.

[1] "It is very generally held that where an insurance agent or broker undertakes to procure a policy of insurance for another, affording protection against a designated risk, the law imposes upon him the duty, in the exercise of reasonable care, to perform the duty he has assumed and within the amount of the proposed policy he may be held liable for the loss properly attributed to his negligent default." *Elam v. Realty Co.*, 182 N.C. 599, 602, 109 S.E. 632, 633. Accord: *Wiles v. Mullinax*, 267 N.C. 392, 148 S.E. 2d 229. "To enforce such liability the plaintiff, at his election, may sue for breach of contract, or for negligent default in performance of duty imposed by contract." *Bank v. Bryan*, 240 N.C. 610, 83 S.E. 2d 485.

In the present case plaintiff has elected to sue for breach of contract. He has alleged an express agreement made in February 1969 whereby defendant agreed with plaintiff to procure "complete and full insurance coverage" on plaintiff's pier, and has further alleged that upon receiving assurance from defendant that such insurance had been procured, plaintiff paid defendant $2,190.00 "to pay the premium on the insurance which the defendant said he had procured." Plaintiff did not allege that defendant failed to use due care in performance of the duty imposed upon him by the contract, but alleged simply

that defendant had failed to perform as he had agreed to perform.

[2] Viewing the evidence in the light most favorable to plaintiff, as we are required to do in passing on an exception to the trial court's ruling on a motion for a directed verdict made by a defendant in a jury case under Rule 50(a) of the Rules of Civil Procedure, *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396, we find no evidence tending to establish the contract alleged in the complaint. When plaintiff purchased the pier in February 1969, he had never met, communicated with, or had any contact of any nature with defendant or with anyone authorized to represent defendant. Plaintiff simply took over from the previous owners the existing insurance policy which defendant had procured for them, sending to defendant through the real estate agent a check for the prorata portion of the premium accruing from and after the date plaintiff acquired title to the pier. Plaintiff's first contact of any nature with defendant occurred a substantial period of time later, and his total contacts with defendant prior to the storm consisted only of two brief conversations. In neither of these did plaintiff request nor did defendant agree to procure any insurance whatsoever in addition to that which was already in force. At most, the evidence shows merely that defendant promised, without consideration, to get a copy of the existing policy for the plaintiff, and that defendant told plaintiff not to worry about it because he was "fully covered." Plaintiff admitted, however, that defendant had not discussed with him what plaintiff was covered for or against. The vague assurance that plaintiff was "fully covered," volunteered by defendant without consideration, was not sufficient to support a finding that defendant thereby contracted with plaintiff to procure a policy of insurance affording plaintiff complete protection against the particular risk which resulted in plaintiff's loss.

[3, 4] While, as above noted, plaintiff grounded his action in contract and not in tort, had plaintiff by appropriate allegation sought to base his action on the theory that defendant was actionably negligent, the evidence would also have been insufficient to support a recovery upon that theory. As above noted, the evidence would not support a finding that defendant had contracted to procure insurance affording plaintiff complete protection against the particular risk which resulted in his loss,

and defendant could not be found negligent in failing to perform a duty which he had never contractually undertaken to perform and which was not otherwise imposed on him by law. While, in view of the 80% co-insurance and the $2,500.00 deductible clauses, it may now appear that plaintiff's pier was underinsured, there is no evidence that defendant knew the value of the pier or that his advice had been sought or given as to the amount or type of insurance which should have been carried. In this regard the evidence shows no more than that defendant, at the request of the former owners, had procured insurance of the type required to satisfy the Small Business Administration, holder of a mortgage on the pier. In view of the very high premium, such insurance may have been all that a prudent businessman would have carried. Plaintiff did not allege or at the trial seek to base his action on the theory that defendant was actionably negligent in failing to furnish plaintiff a copy of the existing policy and in telling plaintiff not to worry because he was "fully covered," thereby lulling plaintiff into a feeling of false security which proximately caused his loss. He may not for the first time pursue such a theory on this appeal. "Where a cause has been tried on one theory in the lower court, appellant will not be permitted to urge a different theory on appeal." 1 Strong, N.C. Index 2d, Appeal and Error, § 4, p. 108. Had plaintiff pursued such a theory at the trial of this case, an issue as to plaintiff's contributory negligence would have arisen. "Where, in a case of this kind, the action is for tort, and there is a negligent default on the part of the plaintiff contributing to the injury, this would have the effect of defeating the action." *Elam v. Realty Co., supra.*

We find no error in the judgment directing verdict for the defendant. We have reviewed plaintiff's remaining assignments of error and find them without merit. The judgment appealed from is

Affirmed.

Judges CAMPBELL and MORRIS concur.