BRADLEY FREIGHT LINES, INC., A CORPORATION v. POPE, FLYNN & COMPANY, INC., A CORPORATION

No. 7828SC941

(Filed 17 July 1979)

1. **Rules of Civil Procedure § 41— voluntary dismissal—reference to rule unnecessary**

    There was no merit to defendant's contention that to gain the benefit of the "saving" provision of G.S. 1A-1, Rule 41(a), there must be a specific reference to Rule 41 in plaintiff's voluntary dismissal.

2. **Insurance § 2.2— negligent advice of agent—cause of action proper—sufficiency of evidence**

    Plaintiff could properly bring a cause of action based on negligent advice against an insurance agent, and plaintiff's evidence was sufficient to withstand defendant's motions for directed verdict where it tended to show a breach of duty by defendant in negligently conveying false assurances to the plaintiff concerning the extent of insurance coverage on substituted vehicles that were not specifically endorsed.

3. **Evidence § 29.1— letter—authenticity**

    A letter received in due course which purports to be in response to a letter previously sent by the receiver is prima facie genuine and is admissible in evidence without other proof of its authenticity.

APPEAL by defendant from *Lewis, Judge*. Judgment entered 16 May 1978 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 15 June 1979.

This lawsuit is a result of a motor vehicle accident which occurred in the State of Iowa on 9 September 1970. Plaintiff, a Tennessee trucking corporation doing business in North Carolina, one of whose trucks was involved in the accident, was the defendant in an Iowa lawsuit brought as a result of the accident. Plaintiff's insurer, Carolina Casualty Insurance Co., Inc., refused to defend the plaintiff in the Iowa lawsuit, claiming that its insurance coverage under a policy between the plaintiff and Carolina Casualty Insurance Co. did not extend to substituted vehicles that had not received a special endorsement from the insurance agency, the defendant in this case. The plaintiff's damaged vehicle in the accident was a substituted vehicle which had not received a special endorsement in accordance with the insurance policy.

In the Iowa lawsuit, judgment was rendered against this plaintiff and damages were assessed at $35,232.73. Carolina Casualty refused to pay said judgment. The plaintiff subsequently entered into a compromise settlement of the Iowa judgment, whereby the plaintiffs in the Iowa lawsuit were paid $15,000 in settlement of the case with an assignment of all claims. Carolina Casualty, pursuant to Interstate Commerce Commission requirements, paid to the plaintiff in the Iowa case the sum of $10,000.

Carolina Casualty then instituted a lawsuit against the plaintiff in the District Court of Buncombe County which resulted in a consent judgment, whereby the plaintiff paid Carolina Casualty $3,000 in settlement of the monies paid by Carolina Casualty to the Iowa plaintiff.

Plaintiff later instituted an action against Carolina Casualty, American Underwriters, Inc., and Pope, Flynn & Company, the defendant in the present action. In that case, it was adjudged and decreed that the truck involved in the Iowa accident was not covered under the terms of the insurance policy and that Carolina Casualty was not liable. The court allowed a voluntary dismissal without prejudice as to Pope, Flynn & Company and Carolina Casualty on 7 December 1976.

On 13 July 1977, plaintiff filed complaint in the present action alleging that the defendant, by and through its president, John S. Flynn, negligently advised the plaintiff that substitution of vehicles not listed on any insurance policy for vehicles covered by an insurance policy which were at the time nonoperative was authorized and that no special endorsement on the policy was required.

At the trial, evidence for the plaintiff tended to show that defendant had acted as plaintiff's insurance agent for several years and that plaintiff depended on the defendant for insurance advice. On 20 August 1970, Mr. Flynn, president of defendant insurance agency, delivered an insurance policy to Mr. J. C. Cope, president of the plaintiff corporation. Mr. Cope had previously inquired of Mr. Flynn as to whether a policy could be purchased by the plaintiff which would eliminate the necessity of reporting to the agency whenever substitutions of owned vehicles not listed in the policy were made. At the time of the delivery of this policy, Mr. Flynn told Mr. Cope "that we [the plaintiff] didn't have to report in to him [the defendant] each time we wanted to substitute." On 9 September 1970 a substituted truck, whose substitution went unreported to the agency, was involved in the Iowa accident. A letter from Carolina Casualty to the plaintiff denying liability was introduced.

On 21 September 1972, Mr. Cope discussed the Iowa lawsuit with Mr. Flynn. Mr. Cope asked for a confirmation letter from Mr. Flynn concerning the assurances that had been given as to substituted vehicles. Mr. Flynn provided such a letter as follows:

"The question was asked in regards to the operation of a tractor and trailer used for substitute when another trailer is broken down and in the garage for repairs. He informed me that it is perfectly in order to substitute a unit when one of the units properly covered is under repair. There was no restriction attached as to the unit being hired or owned unit. It is our understanding that the Policyholder could substitute and was so advised. Very truly your [sic], Pope, Flynn & Company, Inc., John S. Flynn," signed, "John S. Flynn, President." Copy to Bill Fairey.

At the close of plaintiff's argument, defendant moved for a directed verdict. The motion was denied, at which time the de-

fendant renewed his motion which was again denied. The defendant presented no evidence.

The jury answered three issues submitted to it as follows:

1. Did the plaintiff, Bradley Freight Lines, Inc. incur loss or losses as a result of the defendant's negligent advice, as alleged in the Complaint, that a substituted vehicle was covered under the Carolina Casualty Company Policy # 144833?

ANSWER: Yes

2. Did the plaintiff, Bradley Freight Lines, Inc., by its own negligence contribute to its loss or losses?

ANSWER: No.

3. What amount, if any, is the plaintiff, Bradley Freight Lines, Inc., entitled to recover of the defendant, Pope, Flynn & Company, Inc.?

ANSWER: $24,868.28.

Defendant appeals.

*Morris, Golding, Blue & Phillips, by William C. Morris, Jr., for defendant appellant.*

*Reynolds, Nesbitt, Crawford & Mayer, by Joseph C. Reynolds and William M. Patton, for plaintiff appellee.*

CARLTON, Judge.

Defendant first assigns as error the failure of the trial court to grant defendant's motions for directed verdict made at the close of the plaintiff's evidence and at the close of all the evidence.

[1] Procedurally, defendant contends that the statute of limitations bars plaintiff's claim, as the voluntary dismissal taken by the plaintiff in the earlier action did not specifically refer to G.S. 1A-1, Rule 41(a) and thus the present claim is not "saved" by that statute. Defendant's position is that the voluntary dismissal without prejudice must refer to Rule 41(a) in order to gain the rule's benefit of a one year extension within which to file the same lawsuit.

Rule 41(a)(1) provides as follows:

(a) *Voluntary dismissal; effect thereof.* —

(1) By Plaintiff; by Stipulation.—Subject to the provisions of Rule 23(c) and of any statute of this State, an action or any claim therein may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before the plaintiff rests his case, or; (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of this or any other state or of the United States, an action based on or including the same claim. If an action commenced with the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, *a new action based on the same claim may be commenced within one year after such dismissal* unless a stipulation filed under (ii) of this subsection shall specify a shorter time. (Emphasis added.)

Neither our nor the appellant's research discloses any authority for the defendant's contention that to gain the benefit of Rule 41(a)'s "saving" provision, there must be a specific reference to Rule 41 in the dismissal. The fact that plaintiff's notice of dismissal in this case did not refer to the specific rule of its origin would appear to have no legal significance. As Rule 41 is the only procedural rule which addresses voluntary dismissals, no confusion as to the effect of the dismissal could possibly have resulted from this omission. In analogous situations, other courts have emphasized that the *content* of a notice of dismissal controls, not a wrong label. *See* 5 Moore's Federal Practice, ¶ 41.02[2], p. 41-21; *Williams v. Ezell*, 531 F. 2d 1261 (5th Cir. 1976); *Neifeld v. Steinberg*, 438 F. 2d 423 (3d Cir. 1971). We think this reasoning should be extended to encompass situations such as the case at bar where a label *omission* is the alleged error. The voluntary dismissal without prejudice entitled the plaintiff to reinstate his claim within one year from the date of the notice, that being 7 December 1976. Plaintiff filed his complaint in the present action on 13 July 1977, well within the one-year limitation extension

period. The present action is therefore not barred by the statute of limitations and defendant's argument is without merit.

The defendant appellant also contends that the present action is not the "same claim" as the earlier action within the meaning of Rule 41(a)(1), and therefore a directed verdict for defendant would have been proper. Defendant argues that the earlier action was an action for breach of contract and the present action is one which makes no reference to breach of contract, but is solely bottomed on the theory of negligent advice. However, the record discloses that recovery based on negligent advice was advanced as a theory in plaintiff's complaint in the earlier action. This assignment of error is therefore overruled.

[2] Substantively, defendant argues that a cause of action based on negligent advice against an insurance agent has never been recognized in this State and should not now be recognized. While we agree with defendant that no North Carolina case basing recovery expressly on the theory of negligent advice of an insurance agent can be found, we do not agree that plaintiff's claim falls short of a valid cause of action.

As a general rule, an insurance agent who, with a view to compensation, undertakes to procure insurance for another owes the duty to his principal to exercise good faith and reasonable diligence, and any negligence or other breach of duty on his part which operates to defeat the insurance coverage procured or causes the principal to be underinsured will render the agent liable for the resulting loss. *Anno*: 72 A.L.R. 3d 747; *Johnson v. George Tenuta and Co.*, 13 N.C. App. 375, 185 S.E. 2d 732 (1972); *Elam v. Smithdeal Realty Ins. Co.*, 182 N.C. 599, 109 S.E. 632 (1921). In *Wiles v. Mullinax*, 267 N.C. 392, 395, 148 S.E. 2d 229, 232 (1966), Justice Sharp, now Chief Justice, writing for our Supreme Court stated: "Where an insurance broker becomes liable to his customer for failure to provide him with the promised insurance, the latter, at his election, may sue for breach of contract *or for negligent default in the performance of a duty imposed by contract*." (Emphasis added.)

Proceeding in tort against the insurer is therefore clearly actionable in North Carolina. In *Johnson v. Tenuta and Co., supra*, Judge Parker emphasized that insured's remedies are not limited

to breach of contract, but can be based on actionable negligence as well.

Cases from other jurisdictions characterize a cause of action for negligent advice as one for negligent misrepresentation. In *Greenfield v. Insurance, Inc.*, 19 Cal. App. 3d 803, 97 Cal. Rptr. 164 (1971), the defendant insurance brokerage firm was held to have negligently misrepresented to the plaintiff insured the extent of policy coverage. The plaintiff scrap iron dealer specifically requested business interruption insurance covering mechanical breakdown of an automobile shredder from the defendant insurance brokerage firm which had handled the plaintiff's insurance needs for 10 years. The brokerage firm informed the plaintiff, after contacting an insurance company, that it had obtained the type of coverage requested. The policy, however, specifically excluded loss caused by mechanical breakdown. The California court found that the defendant had violated its duty to exercise reasonable care in seeking coverage and that the plaintiff had justifiably relied on the firm's representation of coverage.

In the case *sub judice*, we hold that plaintiff alleged a valid cause of action in negligence against the defendant. Plaintiff's evidence tended to show the relationshp between the parties and a resulting duty on the part of the defendant. The evidence tended to show a breach of that duty by the defendant in negligently conveying false assurances to the plaintiff concerning the extent of insurance coverage on substituted vehicles that were not specifically endorsed. Plaintiff's evidence, taken in the light most favorable to the plaintiff and given the benefit of every reasonable inference which can be drawn therefrom, was sufficient to withstand defendant's motions for directed verdict. *See*, 11 Strong, N.C. Index 3d, Rules of Civil Procedure, § 50, p. 326; *Younts v. State Farm Insurance Co.*, 281 N.C. 582, 189 S.E. 2d 137 (1972).

Defendant next assigns as error the trial court's admission of a letter into evidence which had not been properly authenticated. The letter, dated 7 April 1971, was a reply from Carolina Casualty in response to a report sent by the plaintiff, wherein Carolina Casualty denied liability to the plaintiff on the insurance policy.

[3] A letter, received in due course which purports to be in response to a letter previously sent by the receiver, is *prima facie*

genuine and is admissible in evidence without other proof of its authenticity. 2 Stansbury, N.C. Evidence § 236, p. 216 (Brandis rev. ed. 1973); *Echerd v. Viele*, 164 N.C. 122, 80 S.E. 408 (1913). This assignment of error is overruled.

We have reviewed defendant's remaining assignments of error and find them to be without merit.

In the trial below, we find

No error.

Judges CLARK and ERWIN concur.