J. A. ALFORD AND WIFE, MARY V. ALFORD v. TUDOR HALL AND ASSOCI-
ATES, INC.

No. 8430SC1117

(Filed 18 June 1985)

Insurance § 2.2— agent's failure to procure insurance—insufficient evidence of neg-
ligence

 Plaintiffs' evidence was insufficient to support a jury verdict finding defendant agent negligent in failing to procure insurance on plaintiffs' house where it tended to show that the male plaintiff told defendant's employee that he needed insurance on his house but left open the extent of coverage and the amount of premium, that the male plaintiff only requested defendant to calculate premiums for several coverages and said he would bring a check by later, and that defendant's employees at no time informed plaintiffs that their new house was covered or that a policy of insurance would be sought from an insurer, and where the evidence failed to show that the parties had a course of dealing whereby defendant would obtain insurance for plaintiffs without their approval as to the amount of coverage.

APPEAL by defendant from *Burroughs, Judge.* Judgment entered 5 April 1984 in Superior Court, MACON County. Heard in the Court of Appeals 14 May 1985.

In January, 1983 plaintiffs commenced an action against defendant, alleging that defendant was negligent in failing to procure insurance on plaintiffs' house. Plaintiffs requested damages of $55,000 plus interest for loss by fire to the house.

The plaintiffs' evidence showed that on the Monday before Thanksgiving, in 1981, plaintiff Julius Alford went to defendant's office in Highlands, North Carolina, to inquire about insurance. The plaintiff spoke with John Hall, defendant's employee, telling him that he (plaintiff) needed insurance on a house he was building. Mr. Hall responded, "Well, how much do you need?" Plaintiff

responded that he had never built a house before and did not know. Mr. Hall inquired about the footage of the house, the building materials used, whether it was to have a fireplace, and about the roof. Mr. Hall then said the plaintiff would need insurance in the neighborhood of $75,000. Plaintiff said that the property would also have a barn on it, and Mr. Hall replied that, "Well, maybe we better figure it for a little bit more." Plaintiff then requested that Mr. Hall figure premiums for $75,000, $85,000 and $95,000. Mr. Hall recommended a homeowner's policy, as opposed to builder's risk, which plaintiff requested. Plaintiff testified that he told Mr. Hall to figure the premiums and then give him a call that afternoon and that he would bring in a check the next day. He told Mr. Hall he would be out of town that afternoon, but to call anyway. Mr. Hall, he says, said, "okay."

Plaintiff also testified that it was his practice to decide how much of his property he wanted covered and then when the premiums were quoted he would decide whether he was willing to pay the premium. He said that he knew he wanted $75,000 worth of coverage on his new house, but had not decided whether he wanted more.

Defendant admits none of its employees called plaintiff on Monday afternoon. Plaintiff testified that he returned to defendant's office that afternoon after it had closed, but that no one was there. Plaintiff testified that the next day he got an emergency call from Cashiers, North Carolina, and spent the entire day there repairing a freezer. On Wednesday morning, he worked in Highlands and at 12:00 p.m. went to defendant's office. He found the office closed because of the Thanksgiving Holiday. A note on the door said it would be closed until Monday. Plaintiff went by the office again on Friday on the chance someone would be there, but found no one.

Plaintiffs' evidence showed further that a fire occurred in his house on the Saturday night after Thanksgiving. On the following Monday, plaintiff went to defendant's office to inquire about coverage. Defendant, after consulting with its underwriters, told plaintiff he had no coverage for the fire.

Plaintiffs also presented evidence that their present house was insured through defendant, but that they had merely assumed the policy when they purchased it from plaintiff Julius

Alford's aunt. Mr. Alford testified that he bought liability insurance for his company from Tony Chambers when Chambers was with defendant, but that a week or so later Chambers left defendant and started his own office. Mr. Alford testified that he bought the insurance from Tudor Hall, but that at the time of the fire and now, he carries it through the Chambers firm. Further, Mr. Alford testified that all his automobile insurance is with Allstate Insurance.

Plaintiffs presented John Hall, who testified that (1) plaintiff Julius Alford did not fill out an application for the insurance, (2) plaintiff did not agree to any specified premium or limit to coverage, and (3) defendant did not at any time tell plaintiff he was insured.

Defendant moved for a directed verdict at the close of plaintiffs' evidence, which was allowed as to plaintiffs' contract claim and was denied as to the negligence claim. The jury returned a verdict of negligence, and defendant moved for judgment notwithstanding the verdict. The trial judge granted this motion and plaintiffs appeal.

*Holt, Haire and Bridgers, by R. Phillip Haire, for plaintiff appellants.*

*Morris, Golding and Phillips, by Thomas R. Bell, Jr. and James N. Golding, for defendant appellee.*

ARNOLD, Judge.

The sole question presented is whether the trial court erred in granting the defendant's motion for judgment notwithstanding the verdict.

Judgment notwithstanding the verdict was properly granted if all the evidence supporting plaintiffs' claim, taken as true and considered in the light most favorable to plaintiffs, was not sufficient as a matter of law to support a verdict for the plaintiffs. *Hargett v. Air Service and Lewis v. Air Service*, 23 N.C. App. 636, 638, 209 S.E. 2d 518, 519 (1974), *cert. denied* 286 N.C. 414, 211 S.E. 2d 217 (1975); *Musgrave v. Savings & Loan Assoc.*, 8 N.C. App. 385, 392, 174 S.E. 2d 820, 824 (1970).

The plaintiffs claim that defendant negligently failed to procure fire insurance on plaintiffs' house. The law is well-settled

that an insurance agent or broker is not obligated to assume the duty of procuring a policy of insurance for a customer, *Musgrave v. Savings & Loan Assoc.*, 8 N.C. App. 385, 393, 174 S.E. 2d 820, 825 (1970), but that an agent or broker "who, with a view to compensation for his services, undertakes to procure insurance on the property to another, and who fails to do so, will be held liable for any damage resulting therefrom." *Boney, Insurance Comr. v. Insurance Co.*, 213 N.C. 563, 566, 197 S.E. 122, 125 (1938) *quoting* 18 A.L.R. at 1214. *See also Elam v. Realty Co.*, 182 N.C. 599, 602, 109 S.E. 632, 633 (1921).

In determining whether an agent has undertaken to procure a policy of insurance, a court must look to the conduct of the parties and the communications between them, and more specifically to the extent to which they indicate that the agent has acknowledged an obligation to secure a policy. Where "an insurance agent or broker promises, or gives some affirmative assurance, that he will procure or renew a policy of insurance under circumstances which lull the insured into the belief that such insurance has been effected, the law will impose upon the broker or agent the obligation to perform the duty which he has thus assumed." 3 Couch on Insurance 2d (Rev. ed.) § 25:46 (1984). Further, if the parties have had prior dealings where the agent customarily has taken care of the customer's needs without consultation, then a legal duty to procure additional insurance may arise without express and detailed orders from the customer and acceptance by the agent. *Id.; see McCall v. Marshall*, 398 S.W. 2d 106 (Tex. 1965).

Evidence that an agent took an application from the customer is sufficient to support a duty to procure insurance. *See Musgrave v. Savings & Loan Assoc.*, 8 N.C. App. 385, 392-93, 174 S.E. 2d 820, 824-25 (1970). A "bare acknowledgment" of a contract to protect the insured against casualty of a specified kind until a formal policy can be issued is enough, even if the parties' communications have not settled all the terms of the contemplated contract of insurance. *Sloan v. Wells*, 296 N.C. 570, 573, 251 S.E. 2d 449, 451 (1979); *see also Harrell v. Davenport*, 60 N.C. App. 474, 477-78, 299 S.E. 2d 308, 311 (1983) (parties' failure to agree on premium or policy period is not fatal to plaintiff's claim).

In the present case, the evidence considered in the light most favorable to the plaintiffs indicates that the defendant's em-

ployees at no time informed or assured plaintiffs that their new house was covered or that a policy of insurance would be sought from an insurer. The evidence shows that although plaintiff Julius Alford told defendant's employee John Hall that he needed insurance on his house, he also left open the question of the extent of coverage and the amount of the premium. Alford requested defendant to calculate premiums for several coverages and said that he would bring a check by later.

Alford testified that in previous dealings with insurance agents other than defendant it was his practice to decide how much coverage he wanted, then examine the premium quoted, and decide whether he was willing to pay the premium. Alford admitted that he had gone to defendant's office before November, 1981 and discussed with John Hall insurance on his barn. The record does not show, however, that Alford went ahead and insured the barn through defendant.

Further, Alford testified that his present house was insured by defendant, but he admitted that he merely assumed the policy, which had been originally purchased by his aunt, when he bought the house from her. Alford also stated that his company's liability policy was acquired through Tony Chambers when Chambers was with defendant's firm, but that Chambers left defendant a week or so later and formed his own firm and that defendant carried the policy through him afterwards and at the time of the fire.

The record indicates that defendant did not have sufficient information or authority to seek a formal policy of insurance for plaintiff, and we do not believe plaintiffs could have reasonably expected defendant to go forward on the basis of the conversation between Mr. Alford and John Hall on the Monday before Thanksgiving. Moreover, the evidence fails to show that the parties had a course of dealing whereby the defendant would obtain insurance for plaintiffs without their approval as to the amount of coverage.

From the record it appears that the defendant did not promise or undertake either impliedly or expressly to procure insurance for the Alfords. An agreement by the agent to calculate premiums at various levels of coverage, without more, is in the nature of preliminary discussion, and does not reflect an undertaking to secure insurance. Given this lack of an undertaking, the

law does not impose on defendant a duty to attempt to contact plaintiff or to warn him of the lack of coverage on his house.

Our review of the record convinces us that the evidence is not sufficient to support an inference that defendant acknowledged an obligation to procure insurance, which is essential to plaintiffs' claim of negligence. The trial judge's grant of judgment notwithstanding the verdict was properly entered.

Affirmed.

Judges MARTIN and PARKER concur.