ESTEBAN GARCIA OLVERA, PLAINTIFF v. CHARLES Z. FLACK AGENCY, INC., DEFENDANT

No. 9129SC419

(Filed 5 May 1992)

1. **Insurance § 2.3 (NCI3d)— agency's failure to procure insurance—breach of contract—negligence and contributory negligence**

     Plaintiff's evidence was sufficient for the jury on the issue of defendant insurance agency's breach of contract to procure homeowners insurance for plaintiff where it tended to show that plaintiff's girlfriend took to defendant agency a bill for homeowners insurance that had been mailed by the agency to a prior owner of plaintiff's home; she told an employee of defendant agency that plaintiff wanted the insurance changed to his name and paid the premium; the employee asked how to spell defendant's name so she would "know how to do it"; the employee told plaintiff's girlfriend that the policy period was one year; the employee gave the girlfriend a receipt stating that payment was received from the prior owner with plaintiff's name in parentheses; no policy of homeowners insurance was ever issued to plaintiff; and plaintiff's home was destroyed by fire seven months later. This evidence was also sufficient to permit the jury to find negligence on the part of defendant agency and presented a question for the jury on the issue of contributory negligence by plaintiff.

     **Am Jur 2d, Insurance § 139.**

     **Liability of insurance broker or agent to insured for failure to procure insurance. 64 ALR3d 398.**

2. **Insurance § 2 (NCI3d)— receptionist for insurance agency— authority to bind agency**

     There was sufficient evidence for the jury to find that a receptionist sitting at the front desk of defendant insurance agency had the authority to bind defendant agency in a contract to procure homeowners insurance for plaintiff.

     **Am Jur 2d, Insurance § 139.**

     **Liability of insurance broker or agent to insured for failure to procure insurance. 64 ALR3d 398.**

APPEAL by plaintiff from judgment entered 15 January 1991 by *Judge Loto Greenlee Caviness* in RUTHERFORD County Superior Court. Heard in the Court of Appeals 9 March 1992.

Plaintiff brought this action 14 December 1988 against defendants Charles Z. Flack Agency, Inc. (hereinafter "the Agency") and Auto-Owners Insurance Company alleging breach of contract and negligence. Auto-Owners moved for summary judgment, and the trial court granted the motion on 21 September 1990. At trial upon the conclusion of plaintiff's evidence, the trial court granted the Agency's motion for a directed verdict.

From this order, plaintiff appeals.

*Goldsmith & Goldsmith, P.A., by C. Frank Goldsmith, Jr., for plaintiff-appellant.*

*Kennedy Covington Lobdell & Hickman, by Wayne P. Huckel and Cory Hohnbaum, for defendant-appellee.*

ORR, Judge.

The issue on appeal is whether the trial court erred in granting the Agency's motion for a directed verdict. For the reasons below, we reverse the order of the trial court.

The Agency issued through Auto-Owners Insurance Company a homeowners insurance policy to Willie Lee Little for coverage from 31 October 1985 to 31 October 1986. On or about 17 December 1985, Little conveyed the house and lot to his mother, Myra Childress. On 24 November 1986, plaintiff contracted to purchase the house and lot from Myra Childress. Plaintiff moved into the house with his children and Vicki Driscoll, the mother of one of his children.

Driscoll testified that in April 1987 a letter addressed to Willie Lee Little arrived in the mail. She took the letter to Ms. Childress who told her it was a bill for insurance and gave it back to Driscoll. The bill from the Agency for a homeowners policy was dated 1 April 1987 and included service charges. Driscoll then took the bill to the Agency and told "a receptionist sitting at the first desk," Ms. Allison Irons, that she wanted to pay the bill. She further testified:

> I told her I wanted to make — to pay this and I wanted to have the insurance changed over into Steve's [plaintiff's] name. And she asked me how to spell Steve — or Esteban, and I

> told her. And she put Willie's name on top of it. She said
> so I'll know how to do it. And then I asked her how long
> the insurance stayed in effect. I thought maybe six months
> or something. And she turned around to another lady that
> was behind her and verified a year. And she told me it lasted
> a year.

Ms. Irons gave Driscoll a receipt stating that the money was re-
ceived from Willie Lee Little with plaintiff's name in parentheses.
On 25 November 1987, the house was destroyed by fire. A formal
proof of loss standard form was submitted. Payment under the
policy was denied.

[1] Plaintiff brought this action alleging breach of contract and
negligence. The trial court granted the Agency's motion for a directed
verdict on the grounds that the evidence was insufficient to establish
a breach of contract or negligence on the part of the Agency and
that in addition the evidence established the plaintiff's contributory
negligence as a matter of law.

In determining a motion for a directed verdict pursuant to
N.C. Gen. Stat. § 1A-1, Rule 50 (1990), the trial court must "consider
all the evidence in the light most favorable to the nonmoving party.
A directed verdict may be granted only if, as a matter of law,
the evidence is insufficient to justify a verdict for the nonmovant."
*Watkins v. Hellings*, 321 N.C. 78, 81, 361 S.E.2d 568, 570 (1987).

> [W]here an insurance agent . . . undertakes to procure a policy
> of insurance for another, affording protection against a
> designated risk, the law imposes upon him the duty, in the
> exercise of reasonable care, to perform the duty he has as-
> sumed and within the amount of the proposed policy he may
> be held liable for the loss properly attributed to his negligent
> default.

*Johnson v. George Tenuta & Co.*, 13 N.C. App. 375, 379, 185 S.E.2d
732, 735 (1972) (quoting *Elam v. Smithdeal Realty and Ins. Co.*,
182 N.C. 599, 602, 109 S.E. 632 (1921)). "If a[n] . . . agent is unable
to procure the insurance he has undertaken to provide, he impliedly
undertakes — and it is his duty — to give timely notice to his customer,
the proposed insured, who may then take the necessary steps to
secure the insurance elsewhere or otherwise protect himself." *Wiles
v. Mullinax*, 267 N.C. 392, 395, 148 S.E.2d 229, 232 (1966). "When,
under these circumstances, the broker fails to give such notice,

he renders himself liable for the resulting damage which his client suffered from lack of insurance." *Id.* " 'To enforce such liability the plaintiff, at his election, may sue for breach of contract, or for negligent default in performance of duty imposed by contract.' " *Johnson*, 13 N.C. App. at 379, 185 S.E.2d at 735 (quoting *Bank v. Bryan*, 240 N.C. 610, 83 S.E.2d 485 (1954)).

In *Johnson*, plaintiff elected to sue for breach of contract, and this Court affirmed the trial court's order granting a directed verdict in favor of defendant on the grounds that there was insufficient evidence to establish a contract. There the evidence only showed that plaintiff took over the existing policy of the prior owners and sent to defendant through the real estate agent a check for the pro rata portion of the premium. Plaintiff never requested nor did defendant agree to procure any insurance in addition to that already in force. At most, the evidence showed that defendant promised without consideration to get a copy of the existing policy and told plaintiff not to worry because he was "fully covered." *Johnson*, 13 N.C. App. at 380, 185 S.E.2d at 736.

In *Alford v. Tudor Hall & Assoc.*, 75 N.C. App. 279, 330 S.E.2d 830, *disc. review denied*, 315 N.C. 182, 337 S.E.2d 855 (1985), this Court affirmed the trial court's grant of defendant's motion for judgment notwithstanding the verdict on plaintiff's negligence claim. The Court stated:

> In determining whether an agent has undertaken to procure a policy of insurance, a court must look to the conduct of the parties and the communications between them, and more specifically to the extent to which they indicate that the agent has acknowledged an obligation to secure a policy. Where "an insurance agent or broker promises, or gives some affirmative assurance, that he will procure or renew a policy of insurance under circumstances which lull the insured into the belief that such insurance has been effected, the law will impose upon the broker or agent the obligation to perform the duty which he has thus assumed." 3 Couch on Insurance 2d (Rev. ed.) §25:46 (1984).

*Id.* at 282, 330 S.E.2d at 832. "Evidence that an agent took an application from the customer is sufficient to support a duty to procure insurance." *Id.* "A 'bare acknowledgement' of a contract to protect the insured against casualty of a specified kind until a formal policy can be issued is enough, even if the parties' com-

## OLVERA v. CHARLES Z. FLACK AGENCY

[106 N.C. App. 193 (1992)]

munications have not settled all the terms of the contemplated contract of insurance." *Id.* at 282, 330 S.E.2d at 833 (quoting *Sloan v. Wells*, 296 N.C. 570, 251 S.E.2d 449 (1979)).

In *Alford*, the evidence indicated that plaintiff told defendant's employee he needed insurance on his home but left open the amount of the premium and extent of coverage. Plaintiff asked defendant to calculate premiums for several coverages and told him he would bring a check later. Further, defendant did not expressly or impliedly promise or undertake to procure insurance for plaintiff. The Court stated: "An agreement by the agent to calculate premiums at various levels of coverage, without more, is in the nature of preliminary discussion, and does not reflect an undertaking to secure insurance." *Id.* at 283, 330 S.E.2d at 833. Therefore, the Court held that defendant was not under any duty to contact plaintiff or warn him of the lack of insurance coverage. *Id.* at 283-84, 330 S.E.2d at 833.

Here Driscoll told Ms. Irons, who works for the Agency, that plaintiff wanted to have the insurance policy changed to his name and paid the premium. Ms. Irons asked how to spell plaintiff's name so she would "know how to do it." The Agency knew the identity of the property and the extent of the coverage, and Ms. Irons clarified the duration of the policy. In looking at the evidence in the light most favorable to plaintiff, the evidence is sufficient for the jury to infer that the Agency agreed to transfer the policy to plaintiff's name and accepted plaintiff's payment as consideration for the policy. Thus the trial court erred in granting the Agency's motion for a directed verdict on the breach of contract claim.

Further, there is sufficient evidence from which a jury could find that the Agency was negligent. The trial court also determined that the evidence establishes plaintiff's contributory negligence as a matter of law. In *Elam*, 182 N.C. at 603, 109 S.E. at 634, our Supreme Court stated:

> [W]here a person of mature years, of sound mind, who can read and write, signs or accepts a deed or formal contract affecting his pecuniary interest, it is his duty to read it, and knowledge of the contents will be imputed to him in case he has negligently failed to do so. But this is subject to the qualification that nothing has been said or done to mislead him or to put a man of reasonable business prudence off his guard.

In *Elam*, the Court held that whether failure to hold an adequate policy is due to plaintiff's own negligence in failing to read his policy and taking out a sufficient policy to protect himself was a question for the jury. *Id.* at 603-04, 109 S.E. at 634. Here the issue of any contributory negligence on the part of plaintiff is a question for the jury. *See id.*

[2] The Agency argues that there is no evidence that Ms. Irons had authority to bind the Agency. We disagree.

> A principal is liable upon a contract duly made by its agent with a third person in three instances: when the agent acts within the scope of his or her actual authority; when a contract, although unauthorized, has been ratified; or when the agent acts within the scope of his or her apparent authority, unless the third person has notice that the agent is exceeding actual authority.

*Foote & Davies, Inc. v. Arnold Craven, Inc.*, 72 N.C. App. 591, 595, 324 S.E.2d 889, 892 (1985). The Agency cites *Fleming v. Employers Mut. Liability Ins. Co.*, 269 N.C. 558, 153 S.E.2d 60 (1967), where our Supreme Court stated:

> "The mere opinion of an agent as to the extent of his powers, or his mere assumption of authority without foundation, will not bind the principal; and a third person dealing with a known agent must bear the burden of determining for himself, by the exercise of reasonable diligence and prudence, the existence or nonexistence of the agent's authority to act in the premises." 3 Am. Jur. 2d, Agency § 78.

*Id.* at 561, 153 S.E.2d at 62. There the Court held that there is no presumption that one answering the telephone may waive the provisions of an insurance policy or bind the employer in important matters. *Id.*

> [I]t is a matter of common knowledge that the insurance business is carried on by agents largely through subordinates, that it cannot properly be carried on in any other way, and that therefore a general agent may, as a matter of implied consent, appoint subagents and subordinates whose statements, acts, knowledge, or receipt of notice within the ordinary course of business will bind the company.

STATE AUTOMOBILE MUTUAL INS. CO. v. HOYLE

[106 N.C. App. 199 (1992)]

43 Am. Jur. 2d *Insurance* § 124 at 206-07 (1982). Thus there is sufficient evidence that Ms. Irons had authority to bind defendant to defeat a directed verdict motion.

For the above stated reasons, the decision of the trial court is reversed and a new trial ordered.

Chief Judge HEDRICK and Judge WALKER concur.