**In re CAROLINA FIRST SECURITIES GROUP, INC., Debtor.**

**Bankruptcy No. A–90–2248W.**

United States Bankruptcy Court,
M.D. North Carolina,
Winston–Salem Division.

Aug. 23, 1994.

Joseph M. Lischwe, Raleigh, NC, for trustee.

L. Bruce McDaniel, Trustee.

Henry C. Roemer, Winston–Salem, NC, for Carlsons.

William Seckinger, Washington, DC, for SIPC.

## MEMORANDUM OPINION

WILLIAM L. STOCKS, Bankruptcy Judge.

This matter came before the Court to determine whether Kenneth P. and Mary Jean Carlson have a valid customer claim before the Securities Investor Protection Corporation ("SIPC"). SIPC was created by the Securities Investor Protection Act of 1970 (hereinafter referred to as "SIPA" or "the Act"), to establish a procedure by which customers dealing with the purchase and sale of securities through established securities exchange firms are provided protection against losses as a result of the failure of such firms. The Carlsons were involved in a transaction with Carolina First Holding Corporation ("Holding Corporation"), the parent corporation of Carolina First Securities Group, Inc., the debtor in this liquidation proceeding. When their statement of claim was rejected by the Trustee, the Carlsons filed an "Opposition to Disallowance of Claim" in which they ask this Court to review the denial of their claim.[1] The Trustee then filed this summary judgment motion requesting affirmation of its denial of the Carlsons' claim.

### STATEMENT OF FACTS

The facts listed below are derived from the Carlsons' "Opposition to Disallowance of Claim No. 21 for Protection as Customer under Securities Investor Protection Act" and the associated exhibits. These facts are relied upon by the Carlsons as the basis of their claim and are taken as true for purposes of the motion for summary judgment.

(1) On July 26, 1990, pursuant to a Letter of Credit Agreement with Holding Corporation, the Carlsons established an irrevocable letter of credit at Southern National Bank in favor of BB & T in the amount of $425,-000.00. The Carlsons secured this letter of credit through a note and security agreement with Southern National, in the amount of $500,000.00, which they collateralized with liens on personal assets. The purpose of the letter of credit was to allow Holding Corporation to obtain financing through BB & T that it would use to acquire Ivy Management, Incorporated, a registered investment advisor. According to the terms and conditions set out in the Letter of Credit Agreement, Holding Corporation was committed to issue to the Carlsons 1.8% of the outstanding shares of its common stock within five days of the issuance of the letter of credit. The Letter of Credit Agreement further provided for reimbursement to the Carlsons in the event that Holding Corporation drew on the line of credit and the Carlsons incurred liability to Southern National Bank.

(2) On August 2, 1990, BB & T established a $425,000.00 line of credit for Holding Corporation, secured by the Carlsons' letter of credit. On that same day, Holding Corporation drew $275,000.00 on the line of credit at BB & T, $151,282.20 of which was paid over to Carolina First Securities Group, Inc. (the debtor). The debtor subsequently applied this amount to the customer account of Mr. & Mrs. Ed Kelly, from which deposited funds apparently were missing.

(3) On August 24, 1990, BB & T demanded payment on its line of credit and Southern National paid the balance when BB & T drew on the letter of credit which the Carlsons had obtained from Southern National Bank. The Carlsons subsequently paid $429,100.91 to Southern National on their obligation. The Carlsons never received shares of Holding Corporation or any note or other evidence of debenture.

(4) On November 28, 1990, the United States District Court for the Middle District of North Carolina granted SIPC's application for the appointment of a Trustee for the liquidation of the business of the debtor, Carolina First Securities Group, Inc. L. Bruce McDaniel was appointed Trustee for the liquidation proceeding and the matter was removed to this court pursuant to 15 U.S.C. § 78eee(b)(4).

### DISCUSSION

**1. Standard for Motion.**

This matter came before the court on the Trustee's motion for summary judgment af-

---

1. A party whose claim is denied by the Trustee may seek a final adjudication of that claim before the bankruptcy court under 15 U.S.C. § 78fff-4(e).

firming the Trustee's determination denying the claim of the Carlsons. Rule 56 of the Federal Rules of Civil Procedure is made applicable in this court pursuant to Bankruptcy Rule 7056. Summary judgment is appropriate when there are no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.Pro. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994). While the party moving for summary judgment has the initial burden of showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law, once the movant has met this burden, the non-moving party may not rest on its pleadings, but must come forward with specific facts showing that evidence exists to support its claims and that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

## 2. Background.

The Securities Investor Protection Act of 1970 protects the assets of investors held by broker-dealers who become insolvent. The Act created the Securities Investor Protection Corporation, a non-profit corporation which maintains an investor protection fund by assessing a portion of the annual gross revenues on all securities dealers registered under the 1934 Securities Act.[2] From this fund the SIPC makes payments, up to certain limits, to customers who deposited cash or securities with failed broker-dealers.

This dispute involves whether the Carlsons qualify as customers under the SIPA since only a "customer" of a registered broker-dealer may recover from the investor protec-

---

**2.** 15 U.S.C. § 78*ddd* et seq.

**3.** "Customer" is a statutorily defined term of art as used in SIPA and is not used in the colloquial sense of "one who buys and trades." Interpreta-

tion fund. Specifically, the SIPA defines a customer [3] as

> [A]ny person ... who has a claim on account of securities received, acquired or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to a sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities, but does not include—(A) [not relevant]; or (B) *any person to the extent that the claim of such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor,* or is subordinated to the claims of any or all creditors of the debtor, notwithstanding that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor. 15 U.S.C. § 78*lll* (2) (emphasis added).

## 3. Status as Customers.

■ The statutory definition embodies a common-sense concept: An investor is entitled to compensation from the SIPC only if he has entrusted cash or securities to a broker-dealer who becomes insolvent; if an investor has not so entrusted cash or securities, he is not a customer and therefore not entitled to recover from the SIPC trust fund. *In re Brentwood Securities, Inc.*, 925 F.2d 325, 327 (9th Cir.1991).

■ Relying on the general final sentence of the definition which refers to "any person who has deposited cash with the debtor for the purpose of purchasing securities," the Carlsons claim that the establishment of the letter of credit was "essentially the equiva-

tion of such statutorily defined terms are a matter of law. *In re Stalvey & Associates, Inc. v. Securities Investor Protection Corp.*, 750 F.2d 464, 468 (5th Cir.1985).

lent of Claimants delivering cash or securities to collateralize the BB & T loan."[4] They further contend that Carolina First Holding Corporation and Carolina First Securities Group, Inc. were both alter egos of David W. Schamens who exercised complete control over all of the companies in the Carolina First "family." Since the Holding Corporation drew on the line of credit and immediately transferred $151,282.20 to the debtor, the claimants argue that the transaction should be regarded as a "deposit" with the debtor in consideration for securities that they were purchasing. Therefore, the claimants say they should be entitled to recover this amount from the investors deposit fund administered by SIPC.[5]

Even when taken in the light most favorable to the claimants, the facts relied upon by the claimants do not warrant such relief. The Carlsons did not deal with the debtor but with Carolina First Holding Corporation, which is not a broker-dealer member of SIPC. Since this is a summary judgment motion, however, this court will assume *arguendo* that the alter ego theory is applicable and that claimants, in effect, dealt with the debtor. Even so, the Carlsons still must qualify as customers by showing that they

deposited cash for the purpose of purchasing securities. There is no rational interpretation of the facts which permits such a conclusion.

The Carlsons did not deposit cash with *any* Carolina First company. Instead, in the relevant transactions, the Carlsons provided a letter of credit to collateralize a line of credit for the Holding Corporation. In effect, they were pledging their creditworthiness to guarantee a loan for the Holding Corporation. Although the claimants characterize this letter of credit as "cash equivalent consideration," it did not create a cash deposit. If the Holding Corporation had not drawn on the line of credit, the Carlsons would never have had an obligation to pay any money for the stock in Holding Corporation. If the Holding Corporation had repaid its loan and the letter of credit had expired as envisioned in the letter of credit agreement, the Carlsons would have had no out-of-pocket expenditure. In reality, the Carlsons provided a loan guaranty for Holding Corporation for which they were to receive an interest in that company. They were entitled to the "stock" in Holding Corporation regardless of whether a single penny was ever drawn on the letter of credit.[6] The only

---

4. Claimants' motion, p. 3.

5. The Carlsons' initial argument is a claim for subrogation. They contend that funds secured by their letter of credit were wrongfully converted by Holding Corporation to the debtor to replenish the Kellys' customer account with the debtor and that they are therefore entitled to subrogation to the Kellys' right to recover from the SIPC. Accepting the Carlsons' factual assertions as true, they are not entitled to this equitable relief. Subrogation may be invoked when the party claiming the benefit of subrogation pays the obligation of another for the purpose of protecting some real or supposed interest of his own; it is not applied in favor of a volunteer who, under no legal or moral obligation and having no right or interest of his own to protect, discharges the debt of another. *Trustees of Garden of Prayer Baptist Church v. Geraldco Builders, Inc.*, 78 N.C.App. 108, 336 S.E.2d 694, 698 (1985); *Boney, Insurance Commissioner v. Insurance Co.*, 213 N.C. 563, 197 S.E. 122 (1938). Notwithstanding attempts by the Carlsons to characterize the draws on their letter of credit as qualifying them to be subrogated to the Kellys' "claim," they cannot overcome the fact that they did not pay the obligation of another. The Carlsons guaranteed a loan in exchange for an interest in Holding Corporation; they did not dis-

charge the debt of another because they thought they had a moral obligation to do so. In addition, the doctrine of subrogation contains the clear limitation that a party can acquire no better right by subrogation than that of the principal. *Thomas v. Ray*, 69 N.C.App. 412, 317 S.E.2d 53, 58 (1984); *Dowdy v. Southern Railroad Co., Inc.*, 237 N.C. 519, 525, 75 S.E.2d 639, 643 (1953). The Kellys neither had nor asserted any right to payment from SIPC, so there was no claim to which the Carlsons could be subrogated.

6. The stock apparently fits within the broad SIPA definition of "securities" at 15 U.S.C. § 78*lll* (14). In exchange for the letter of credit, the Carlsons were to receive a non-registered, non-transferable stake in a Holding Corporation equal to 1.8% of the outstanding stock in the corporation, subject to repurchase on demand by the Holding Corporation after repayment of any funds due on the letter of credit. While the Letter of Credit Agreement between Holding Corporation and the Carlsons discussed a stock split followed by the issuance of shares to participants who provided letters of credit, there is no indication that any shares were ever issued in the first place.

consideration from the Carlsons envisioned in the agreement was the temporary guarantee of the Carlsons to collateralize a loan. Such an arrangement simply does not bring the Carlsons within the statutory definition of "customer."

### 4. Exclusion from class of customers.

■ Ironically, the assumptions that claimants make in an attempt to qualify as "customers" also prevent them from qualifying under the Act. Since they dealt exclusively with an entity that is neither a broker nor a member of SIPC (i.e, Holding Corporation), they rely on the alter ego theory to say that Holding Corporation and Debtor, in fact, were one entity and that therefore they made a deposit with a registered broker. If this assumption is permitted, it also prevents the Carlsons from qualifying as a customer because it brings them within the exclusion contained in 15 U.S.C. § 78*lll* (2)(B).

This section provides that the term "customer" does *not* include "any person to the extent that such person has a claim for cash or securities which by contract, agreement, or understanding ... is part of the capital *of the debtor*" (emphasis added). The Carlsons' claim against the Carolina First "family" is for common stock in Holding Corporation in an amount equal to 1.8% of the outstanding shares of Holding Corporation. Applying the Carlsons' alter ego theory which asserts that Holding Corporation is actually the debtor, their Letter of Credit Agreement places them squarely within the exception to the statutory definition of "customer" because their claim is for securities which are part of the capital of the debtor. Therefore, the alter ego theory which the Carlsons assert to establish their right to recover under SIPA excludes them under the statutory exception.

### 5. Scope of Protection under the SIPA.

■ Another reason that the Carlsons may not recover under SIPA is that they are not the type of investors that SIPA was intended to protect. "The object of [SIPA] and the function of the Securities Investor Protection Corporation ... is to protect the public customers of securities dealers from suffering the consequences of financial instability in the brokerage industry." *S.E.C. v. F.O. Baroff,* 497 F.2d 280, 281 (2d Cir.1974); *In re Stalvey & Assoc.,* 750 F.2d 464, 472 (5th Cir.1985) ("SIPA was intended to protect customers who had entered the securities market but then suffered losses as a result of a broker's failure"). The classic example of a covered claim involves the traditional broker-customer relationship in which the customer deposits cash with a broker who is instructed to purchase specific marketable securities. The Carlsons entered into an arrangement that was entirely different. Their transaction involved a highly-speculative private offer of unregistered securities in the Holding Corporation for which there was no public market. In effect, the Carlsons were getting stock in Holding Corporation—they were going into business with Mr. Schamens, the principal in Holding Corporation. Their sole consideration or contribution in this unorthodox arrangement was the provision of an irrevocable letter of credit which would, by its terms, expire after just a few months and, if utilized, had to be repaid by Holding Corporation. This is materially different from the situation covered by SIPA in which an investor deals with a broker *as a broker* and uses the services of the broker to buy or sell securities in publicly traded companies.

■ While the claimants seek a broad application of the protection under the SIPA, "judicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *In re Stalvey & Assoc.,* 750 F.2d 464, 472 (5th Cir.1985). Even if the Carlsons had been successful in meeting the technical definition of "customer," that does not necessarily mean that they could recover from SIPC. There have been at least two occasions on which the Second Circuit declined to extend the Act's protection to parties that fell within the *literal* definition of "customer." *Id.*

In *S.E.C. v. F.O. Baroff,* 497 F.2d 280, 281 (2nd Cir.1974), the court held that a voluntary lender of securities to a failing brokerage house who made the loan to help out the company and not for a purpose related to securities trading did not qualify under

SIPA. Despite finding that the claim placed the lender within the literal definition of "customer," the Second Circuit analyzed the legislative history and determined that the lender was not a party that Congress intended to protect under the SIPA. The circuit court found that the legislative history indicated that only "trading customers" and "public customers" of brokers were within the scope of SIPA. The House Hearings preceding the Act emphasized that "the customer as investor and trader, not ... others who might become creditors of the broker-dealer for independent reasons." *S.E.C. v. F.O. Baroff,* 497 F.2d 280, 283–84 (2nd Cir. 1974).

In *S.I.P.C. v. Executive Securities,* 556 F.2d 98 (2nd Cir.1977), the Second Circuit rejected a literal application of the statutory definition of "customer" for a second time. In this case, two separate entities entered into secured loan agreements under which they lent securities to a broker-dealer in exchange for cash collateral equal to the market value of the shares provided. The court, denying the customer claim, noted that the claimants maintained neither investment nor trading accounts with the liquidating broker-dealer and that their loan contract included ongoing rights and obligations, such as the right of the claimants to demand additional cash collateral if the securities they loaned increased in value. *Id.* at 99.

The Carlsons maintained similar rights in their contractual arrangement with the Holding Corporation. The Letter of Credit Agreement entitled the Carlsons to certain benefits in the event Holding Corporation drew on the line of credit. If Holding Company made any draws, the claimants were entitled to representation on the Board of Directors of Holding Corporation. Subject to certain terms and conditions, Holding Corporation retained the right to repurchase the shares at prices established by Holding Corporation.

These terms make it clear that the claimants entered into a contractual agreement with Holding Corporation which included ongoing rights and obligations for each party. This transaction does not even faintly resemble the traditional securities purchase that the SIPA is intended to protect. It did not establish the Carlsons as public or trading customers of either the Holding Corporation or the debtor. They entered into a series of transactions through which they made a short-term "loan"—their guarantee through a letter of credit—for which they were to receive consideration. There is no indication that the Carlsons had a trading account with Carolina First Securities Group, nor is there any provision for sales commissions in this transaction.[7] The simple fact that the consideration promised was in the nature of securities is not sufficient to qualify the Carlsons as customers under the Securities Investor Protection Act.

### CONCLUSION

Kenneth P. and Mary Jean Carlson lost a substantial sum of money as the result of the business practices of the Carolina First Holding Corporation and the liquidation of the Carolina First Securities Group, Inc. Unfortunately, their loss is not the type that is covered by the limited protection of the Securities Investor Protection Act. The Act provides protection for public investors who deposit cash or securities with a broker for the purchase of securities. The Carlsons' investment did not meet the criteria for coverage under the Act.

As there are no genuine issues of material fact and the Trustee is entitled to prevail as a matter of law, summary judgment will be entered in favor of the Trustee in accordance with this opinion.

---

7. The claimants maintain that they were personal customers of David W. Schamens and that he had been their personal broker for many years. This personal relationship is one of the foundations of their alter ego theory. Even if they did maintain a trading account with the debtor securities group, which was not asserted by the claimants, it would not have any effect on their "customer" status regarding this transaction.

Relief under the SIPA is predicated on a specific transaction, not the prior relationship between the parties involved. *In re Stalvey & Assoc., Inc.* 750 F.2d 464, 470 (5th Cir.1985). See also *S.E.C. v. F.O. Baroff,* 497 F.2d 280, 282 n. 2 (2nd Cir.1974) ("A person may be a 'customer' with respect to some of his claims ... but not with respect to others").

*SUMMARY JUDGMENT*

In accordance with the memorandum opinion which is being filed contemporaneously with this summary judgment, it is

ORDERED, ADJUDGED AND DECREED that the motion for summary judgment filed on behalf of L. Bruce McDaniel, Trustee, shall be and the same hereby is granted; and it is

FURTHER ORDERED, ADJUDGED AND DECREED that the Trustee's determination denying the claim of Kenneth P. and Mary Jean Carlson for protection as customers under the Securities Investor Act shall be and the same hereby is affirmed.