LAWRENCE *v*. FRANCIS.

5-389                                                    267 S. W. 2d 306

Opinion delivered April 26, 1954.

*Joe W. McCoy,* for appellant.

*Ben M. McCray* and *W. H. McClellan,* for appellee.

ED. F. McFADDIN, Justice.   This is an action for damages brought by the property owner, Francis, against the Insurance Broker, Lawrence, for failure to obtain insurance on property in accordance with an agreement. From a verdict and judgment for the plaintiff, Francis, for $4,000.00, the defendant, Lawrence, prosecutes this

appeal; and the main insistence for reversal is that no *definite* contract was ever made by the parties.

## FACTS

Mr. Francis had lived in the State of Minnesota for many years, but decided to move to Arkansas. In July, 1951, he went to Malvern, Arkansas, to see Mr. Craft, a real estate agent, who showed him several places, but none was satisfactory. Then Mr. Craft took Mr. Francis to Mr. Lawrence, also a real estate agent, to look at his listings. Mr. Lawrence showed Mr. Francis the property of Mr. and Mrs. Holiman, which consisted of 2½ acres, with a modern 5-room house, garage, barn, and chicken-house. Mr. Francis agreed to buy the Holiman property for a total price of $5,000.00. He deposited $400.00 with Mr. Lawrence, and signed an agreement to pay the balance of $4,600.00 within 90 days. This contract was signed by Mr. Francis and the Holimans on July 17, 1951, and on that date occurred the agreement here involved. Mr. Francis was to return to Minnesota to liquidate his holdings there, in order to obtain the balance of $4,600.00. Mr. Lawrence was an insurance agent, as well as a real estate agent. Here is Mr. Francis' pertinent testimony:

"A. I gave Mr. Lawrence a check for the Four Hundred Dollars.

"Q. All right, then what happened after the contract was signed there?

"A. Well, we—I asked at that time about insurance, I asked him whether he knew Mr. Holiman had any insurance on that property, and he said he didn't know. He said if he has, he hasn't got it with me; and I said, will you see Mr. Holiman and find out if he has insurance and how much and if you can settle at sufficient coverage will you see if he can transfer it to me and I will pay the premium. If you don't consider it sufficient premium, I want insurance, because I want full coverage. And I asked him what company he represented, and he explained a mutual company to me, and I said that suited

me all right, I had my property in Minnesota listed in a mutual and was satisfied with it, and just about that time the telephone rang. I was sitting right by the telephone.

"Q. Where were you now? I don't believe you made that clear to the jury where you were at this time.

"A. We were at the United Farm Agency's place of business, and Mr. Lawrence was sitting on the daveno there, and I was sitting on a chair close to the phone . . . And well, Mr. Craft came and answered the phone. We stopped talking, of course, and as soon as he hung up I turned to Mr. Lawrence and I said, 'And you will take care of the insurance?' and he said, 'Yes, yes', so I considered the insurance would be taken care of, being as he was an insurance agent—in that business —and I had told him that I wanted full coverage."

Mr. Francis returned to Minnesota and in August sent to Mr. Craft a cashier's check for $4,600.00, who delivered it to Mr. Lawrence on August 21st; and on the same day, he paid the money to Mr. and Mrs. Holiman. As Notary Public, Mr. Lawrence took the acknowledgment of the deed transferring the property that day to Mr. Francis. The Holimans had a $4,000.00 fire insurance policy on the house and buildings; and on August 21st they cancelled their insurance. Mr. Lawrence does not claim that he mentioned anything to the Holimans about transferring the insurance policy to Mr. Francis; and Mr. Lawrence did not insure the property for Mr. Francis with any company.

On August 31st, all of the buildings were destroyed by fire. Mr. Francis, still in Minnesota, learned of the fire on September 7th, and immediately went to Malvern and contacted Mr. Lawrence; and here is Mr. Francis' testimony about that conversation:

"Q. Did you contact Mr. Lawrence relative to making claims for your insurance?

"A. I did.

"Q. What were you then advised?

"A. Well, he didn't deny—the only defense that he offered then was that I didn't tell him how much insurance I wanted. He didn't deny our conversation, he didn't deny that I asked him if he would take care of it, and he said full coverage, all that meant was coverage against hail, wind, fire, etc., he said that don't mean anything to the amount.

"Q. That was the only excuse he gave you then for not having insured your property, was that you didn't say what specific amount to insure it?

"A. Yes, sir.

"Q. Did you remind him at that time that you had left it up to him as to what was sufficient?

"A. Yes, sir. And I understood that full coverage was the full amount that an insurance company would allow their agents to put on a property."

That Mr. Lawrence did agree to look after the insurance for Mr. Francis is substantiated by Mr. Craft, who testified:

"Q. During the negotiations between Mr. Francis and Mr. Lawrence, did you hear a conversation between them relative to insurance on the improvements on the lands purchased by Mr. Francis?

"A. Yes.

"Q. If your answer to the preceding question is yes, please state whether or not Mr. Lawrence agreed to see that said property was fully insured? And state the conversation relative to the insuring of the property.

"A. Yes. As they closed the deal, Mr. Francis asked Mr. Lawrence, 'Then you will take care of the insurance?' Mr. Lawrence answered the way he does when he is excited. 'Yes, sir, yes, sir. I sure will.' "

## OPINION

The foregoing facts are detailed from the viewpoint of Mr. Francis, since the Jury verdict was in his favor; and in testing the sufficiency of the evidence, we always view the facts in the light most favorable to support the Jury verdict. *Oviatt* v. *Garretson*, 205 Ark. 792, 171 S. W. 2d 287; *Potashnick Truck System* v. *Archer*, 207 Ark. 220, 179 S. W. 2d 696; and see other cases collected in West's Arkansas Digest, "Appeal & Error", § 930.

Mr. Lawrence urges, here, that the foregoing facts are insufficient to support the verdict; and he insists that he was entitled to an instructed verdict in his favor, because he claims the agreement alleged by Mr. Francis shows these defects: (1) there was no consideration; (2) there was no mutuality of assent; (3) there was no agreement as to the price of the policy; (4) there was no agreement as to payment of premium; (5) there was no amount of insurance specified; and (6) there was no duration of the policy stated.

We hold that the Trial Court ruled correctly in refusing Mr. Lawrence's request for an instructed verdict, and also in refusing Mr. Lawrence's other requested Instructions, amplifying on the six matters as above stated. It was shown by another Insurance Agent in Malvern that such a request as Mr. Francis made of Mr. Lawrence, in regard to insurance, was a sufficient instruction to any Insurance Agent to *bind* the risk and extend credit for the coverage. Mr. Lawrence, as a real estate agent, had a commission coming from completing the Holiman sale; and his interest in completing the sale, as well as his profit from writing insurance, constituted a sufficient consideration to support his promise to Mr. Francis to "see about the insurance". In 29 Am. Jur. 130, the holding of the cases is summarized in this language:

"It may be laid down as a general rule that a broker or agent who, with a view to compensation for his services, undertakes to procure insurance on the property of another, and, unjustifiably and through his fault or

neglect, fails to do so, will be held liable for any damage resulting therefrom. Although there is some authority to the effect that one who gratuitously undertakes to procure insurance for another is not liable for his omission to do so, it is generally accepted that the undertaking in itself imposes a duty to procure such insurance, and according to some authorities, the trust and confidence imposed in a broker employed to secure insurance on property afford a sufficient consideration for his undertaking to carry out the instructions given. The general rule in such respect is that where an insurance agent or broker undertakes to procure a policy of insurance for another, affording protection against a designated risk, the law imposes upon him the duty, in the exercise of reasonable care, to perform the duty he has assumed, and within the amount of the proposed policy, he may be held liable for the loss properly attributable to his negligent default. The promise by a property owner to take a policy of insurance, for the securing of which he employs a broker, has been declared to be a sufficient consideration for the broker's undertaking to carry out his instructions with respect to the policy.''

As to what kind of insurance—i. e., fire, windstorm, etc.—there is no need to argue: Holiman had fire insurance, and the buildings were destroyed by fire. As to the amount of the insurance coverage, it was shown that Holiman had $4,000.00 fire insurance on the buildings. Lawrence made no effort to have the Holiman fire insurance policies transferred to Francis: Lawrence could and should have obtained the same kind and amount of insurance for Francis that Holiman had. When the deed was delivered to Lawrence on August 21st, Holiman told Lawrence that he (Holiman) was cancelling his insurance on the property. Certainly on that day Lawrence could and should have either taken over Holiman's fire insurance policy for Francis, or should have obtained other insurance of like amount. Such was his promise to Francis. Lawrence failed entirely to exercise reasonable care to perform his agreement with Francis as to insurance.

In our recent case of *Derby* v. *Blankenship*, 217 Ark. 272, 230 S. W. 2d 481, we had occasion to discuss the liability of an insurance agent, —i. e., a broker—for failure to obtain insurance in accordance with his agreement; and we there approved an Instruction which declared the law to be: that where an insurance agent undertakes to procure a policy of insurance for another, the law imposes upon the agent the duty, in the exercise of reasonable care, to perform the obligation that he has assumed, and the agent may be held liable for any loss—within the amount of the proposed policy—suffered by the applicant attributable to the agent's failure to provide such insurance. We then said:

"The great weight of judicial authority in America permits recoveries against insurance brokers under such circumstances. *Burroughs* v. *Bunch* (Tex. Civ. App.), 210 S. W. 2d 211; *Rezac* v. *Zima,* 96 Kans. 752, 153 Pac. 500, Ann. Cas. 1918B 1035; *Gay* v. *Lavina State Bank,* 61 Mont. 449, 202 Pac. 753, 18 A. L. R. 1204; *Elam* v. *Smithdeal Realty & Ins. Co.,* 182 N. C. 599, 109 S. E. 632, 18 A. L. R. 1210; 2 Couch, Insurance § 468 (p. 1329); 16 Appleman, Insurance, § 8841 (p. 300)."

The case of *Derby* v. *Blankenship* is ruling in the case at bar.

Affirmed.