Boston Camping Distributor Co. Inc. *v.* Lumbermens Mutual Cas. Co.

BOSTON CAMPING DISTRIBUTOR CO., INC. *vs.*
LUMBERMENS MUTUAL CASUALTY COMPANY
(and a companion case [1]).

Suffolk. March 9, 1972. — May 8, 1972.

Present: TAURO, C.J., CUTTER, SPIEGEL, REARDON, & HENNESSEY, JJ.

*Insurance*, General liability insurance, Contract to obtain insurance.
   *Contract*, What constitutes, To obtain insurance.

In a contract action by the insured against the insurer on a liability
   policy which excluded coverage for damage caused by automatic
   sprinkler leakage or discharge, the insurer was not bound to
   defend and indemnify the insured where water escaped from
   the sprinkler and damaged the property of another when an
   employee of the insured accidentally struck the sprinkler pipe
   and head. [771–772]
The fact that a prospective insured told an insurance broker that he
   wanted "insurance coverage from A to Z, second to none," to
   which the broker replied that "he would definitely comply," did not
   constitute a present contract between them. [772]

TWO ACTIONS OF CONTRACT. Writs in the Superior
Court dated August 10, 1966 and August 24, 1966.

The actions were tried before *Sgarzi*, J.

*Edward B. Ginn* for the plaintiff.

*John J. O'Brien* for Lumbermens Mutual Casualty
Company.

*Laurence J. Bloom* for Peter G. Chicos.

REARDON, J. The plaintiff brought separate contract
actions against the defendants Lumbermens Mutual
Casualty Company and Peter G. Chicos. These have
been consolidated and are before us on the plaintiff's
substitute bill of exceptions to the allowance by the
judge of the defendants' respective motions for directed
verdicts. The plaintiff alleges that the defendant insur-
ance company did not carry out the provisions of its

---

[1] Boston Camping Distributor Co., Inc. *vs.* Peter G. Chicos.

770                                                   361 Mass. 769

Boston Camping Distributor Co. Inc. *v.* Lumbermens Mutual Cas. Co.

insurance contract with the plaintiff in its failure to defend and indemnify it for certain losses. Against the defendant Chicos, the plaintiff alleges that as a broker he failed in his promise to obtain for it a policy of liability insurance which would protect it against any liability claims that might be brought against it.

The following facts were stipulated by all parties in both actions: "[O]n August 20, 1964, the insurance policy No. MT397546 issued to the plaintiff by the defendant [insurance company] on July 1, 1964, was in full force and effect . . . . [O]n August 20, 1964, an employee of the plaintiff corporation while in the scope of his employment, and while moving stock on the sixth floor of 374–378 Congress Street, Boston, Massachusetts, did accidently strike a sprinkler pipe and sprinkler head which blow did cause water to suddenly escape therefrom which ran onto the floor, seeping into the fifth floor below which caused water damage to certain property of Treasure Masters Corporation and Boston Wharf Company, which said corporations did sue the plaintiff corporation for said damages." The defendant insurance company "refused to continue to defend and withdrew from the defense of said suits because of a purported exclusion for damages caused by sprinkler leakage in the insurance policy, and as a result [the] plaintiff corporation defended the said suits and made a reasonable settlement of the same by the payment to Treasure Masters Corporation of the sum of $8,457.75, and by the payment to Boston Wharf Company of the sum of $1,542.25, and that said plaintiff incurred reasonable counsel fees in said defense in the sum of $3,250.00."

The relevant provisions of the insurance contract provide as follows: "COVERAGE C — LIABILITY: This Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this Section applies, arising out of the ownership, maintenance or use of the premises, and all opera-

361 Mass. 769                                                771

Boston Camping Distributor Co. Inc. *v.* Lumbermens Mutual Cas. Co.

tions necessary or incidental thereto, and this Company shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this Section, even if any of the allegations of the suit are groundless, false or fraudulent; but this Company may make such investigation and settlement of any claim or suit as it deems expedient."

"EXCLUSIONS. This policy does not apply: . . . B. Under Coverage C of Section II: . . . 6. except with respect to structural alterations and new construction operations performed by independent contractors to injury to or destruction of buildings or property therein, wherever occurring, arising out of any of the following causes, if any such cause occurs on or from premises owned by or rented to the Named Insured. a. the discharge, leakage or overflow of water or steam from plumbing, heating, refrigerating or air conditioning systems, standpipes for fire hose, or industrial or domestic appliances, or any substance from automatic sprinkler systems."

1. In the action against the insurance company, the sole question is the effect of the exclusion clause in issue on an accident of the type which occurred here. The plaintiff argues that the exclusion clause is inapplicable since the injury was not caused by "the discharge . . . of water . . . from automatic sprinkler systems." It claims rather that the cause of the injury was the negligent act of one of its employees, and the discharge from the sprinkler was, at best, an indirect cause. Because the term "cause" was modified by such phrases as "direct and indirect" in other parts of the insurance contract, it is urged upon us that if the defendant insurance company "meant to exclude indirect or remote causes in its exclusion clause pertaining to liability coverage under Coverage C, . . . [it] certainly could have and should have used words similar to 'directly or indirectly,'" or other such phrases which were employed in other portions of the same insurance policy. On the

assumption that the term "cause" had been so modified, we do not think that the deletion of similar words from the exclusion clause was of importance since those modifying words could infuse no additional meaning in the clear contract statement of the intent to exclude damage caused by discharge from the sprinkler system. See *National Union Fire Ins. Co.* v. *Frisco Frolics Musical Comedy Co.* 65 F. 2d 928, 929 (7th Cir.); Couch on Insurance, 2d, § 15:44. We see no error in the allowance of the motion for a directed verdict in this case.

2. In the action against the defendant Chicos, in addition to the evidence stipulated and referred to above evidence was provided by the president of the plaintiff corporation who testified that he told the defendant broker that "he wanted insurance coverage from A to Z, second to none, to which the defendant replied that he would definitely comply." There was evidence contravening this testimony. The oral exchange which occurred "looked to the making of a contract" but "cannot be regarded as a part of the contract that was made." *Phoenix Spring Beverage Co.* v. *Harvard Brewing Co.* 312 Mass. 501, 505. The president of the plaintiff corporation was expressing his intention to procure a good insurance contract. Any reply made by the broker was expressive of present intention but was not in its effect a contract. *Phoenix Spring Beverage Co.* v. *Harvard Brewing Co., supra,* 506. *Kuzmeskus* v. *Pickup Motor Co. Inc.* 330 Mass. 490, 493. *Rayden Engineering Corp.* v. *Church,* 337 Mass. 652, 661–662. Here again the court did not err in allowing the defendant's motion for a directed verdict.

*Exceptions overruled.*