2002 UT App 98

Ken HARRIS, Plaintiff and Appellant,

v.

Rick ALBRECHT; Rick Albrecht Insurance Agency, Inc.; and State Farm Fire & Casualty Co., Defendants and Appellees.

No. 20001045–CA.

Court of Appeals of Utah.

April 11, 2002.

Lynn C. Harris, Harris & Carter, Provo, and Ryan M. Harris, Jones Waldo Holbrook & McDonough, Salt Lake City, for Appellant.

Paul M. Belnap, David R. Nielson, and Peter Barlow, Strong & Hanni, Salt Lake City, for Appellees.

Before Judges DAVIS, GREENWOOD, and THORNE.

## OPINION

THORNE, Judge.

¶ 1 Appellant Ken Harris (Harris) appeals from an order granting summary judgment, dismissing his claims for breach of a contract to procure insurance and negligence. We reverse and remand.

## BACKGROUND [1]

¶ 2 Appellee Rick Albrecht (Albrecht) is an insurance agent for co-appellee State Farm Fire & Casualty Company (State Farm).[2]

---

1. We recite the facts in a light most favorable to Harris, the non-moving party. *See Brockbank v. Brockbank,* 2001 UT App 251, ¶ 10, 32 P.3d 990.

2. Albrecht's company, Rick Albrecht Insurance Agency, is also a co-appellee.

Over the course of several years, Albrecht and Harris developed an on-going business relationship, wherein Albrecht procured various types of insurance coverage for Harris. This relationship began in 1989, when Albrecht procured automobile insurance coverage for Harris. Subsequently, Albrecht procured insurance coverage for Harris's home, boat, RV, and a liability umbrella policy.

¶ 3 Albrecht and Harris conducted their business largely over the telephone, "rarely" discussing the particulars of the various types of coverage Harris sought to obtain from Albrecht. According to Harris, the two men talked on the telephone every couple of months, and all billings and applications were handled through the mail.

¶ 4 In mid-summer of 1997, Harris telephoned Albrecht regarding insurance coverage for his architecture business. Harris recalled that the conversation between the two was "very short." During that conversation, Harris told Albrecht that he "wanted to place coverage on [his] office and its contents." In response, Harris contends that Albrecht said "okay, he would take care of [it], he would come out and look at [my office] equipment.[3]"

¶ 5 On December 1, 1997, a fire destroyed the building housing Harris's business. That same day, Harris contacted Albrecht to inquire about the status of his business insurance. Harris asked Albrecht: "You placed that coverage we talked about, didn't you?" Albrecht replied: "We talked about it Ken [Harris], but we never did anything about it."

¶ 6 On May 18, 1998, Harris brought claims against Albrecht, Rick Albrecht Insurance Agency, and State Farm (collectively Appellees) for negligent failure to procure insurance and breach of a contract to procure insurance. Subsequently, on May 3, 2000, Appellees filed for summary judgment, seeking dismissal of Harris's complaint.

¶ 7 The trial court entered its order granting Appellees' Summary Judgment Motion and dismissing Harris's Complaint. The trial court found that "there was not a duty to

procure insurance and further no contract to procure was made as the essential terms of the proposed insurance contract were not agreed upon." Harris appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 8 Harris argues the trial court erred by granting Appellees' Summary Judgment Motion. "Summary judgment should be granted only if there has been a showing that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Brockbank v. Brockbank*, 2001 UT App 251, ¶ 10, 32 P.3d 990 (quotations and citations omitted). Further, "[i]n reviewing the district court's grant of summary judgment, we review the court's legal decisions for correctness, giving no deference, and review the facts and inferences therefrom in the light most favorable to the nonmoving party." *Id.* (quotations and citations omitted).

## ANALYSIS

■ ¶ 9 Harris argues the trial court erred by dismissing his claims for negligence and breach of a contract to procure insurance. Initially, we note that a determination of whether an insurance agent breached a duty to procure insurance or whether the agent breached a contract to procure insurance are matters of first impression for this court.

¶ 10 As explained in *Barnett v. Security Insurance Co.*, 84 N.C.App. 376, 352 S.E.2d 855 (1987), an insurance "agent who, 'with a view to compensation for his services, undertakes to procure insurance [for a customer and] fails to do so, will be held liable for any damage resulting therefrom.' " *Id.* at 856–57 (citation omitted); *see also Sanchez v. Martinez*, 99 N.M. 66, 653 P.2d 897, 900 (1982). Further,

> [u]nder such facts, liability may be predicated either upon the theory that defendant is the agent of the insured and has breached a contract to procure a policy of insurance, or that he owes a duty to his

---

**3.** Albrecht denies making such statement. However, Albrecht argues that even if he did make such a statement, it neither established a contract to procure insurance nor a duty to procure insurance.

principal to exercise reasonable skill, care, and diligence in securing the insurance requested and negligently failed to do so. *Sanchez*, 653 P.2d at 900–01.

¶ 11 To establish a claim for failure to procure insurance, a plaintiff must prove the following: (1) an undertaking or agreement by an insurance agent to procure insurance; (2) the agent's failure to use reasonable diligence in attempting to place insurance and his failure to notify the client promptly if he has failed to obtain insurance; and (3) the agent's actions warranted an assumption by the client that he was properly insured. *See Bonner v. Bank of Coushatta*, 445 So.2d 84, 87 (La.Ct.App.1984).

¶ 12 "In determining whether an agent has undertaken to procure insurance, a court must consider the conduct of and the communications between the parties and, more specifically, 'the extent to which they indicate that the agent has acknowledged an obligation to secure a policy.'" *Barnett*, 352 S.E.2d at 857 (citation omitted). Further, "[w]here an insurance agent ... gives some affirmative assurance, that he will procure ... a policy of insurance under circumstances which lull the insured into belief that such insurance has been effected, the law will impose upon the ... agent the obligation to perform the duty which he has thus assumed." *Id.* (quotations and citations omitted). Finally, determining whether an agent has failed to procure insurance is ordinarily a question of fact. *See* 3 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 46:46 (3d ed.1996).

¶ 13 We find three cases to be helpful in determining this issue. In *Massengale v. Hicks*, 639 S.W.2d 659 (Tenn.Ct.App.1982), the Tennessee Court of Appeals upheld a trial court's decision finding that the defendants[4] breached an implied contract to procure insurance for the plaintiff. *See id.* at 660. In *Massengale*, the plaintiff and the defendant insurance agent had an existing business relationship spanning thirteen years. *See id.*

¶ 14 In July of 1977, the plaintiff in *Massengale* received a notice of nonrenewal of insurance, which stated that his automobile insurance would expire at 12:01 A.M. on September 12, 1977. *See id.* The plaintiff's mother immediately notified the defendant of the notice, and the defendant said that he "would take care of it." *Id.* Both the plaintiff and the plaintiff's mother subsequently discussed the insurance policy with the defendant on numerous occasions. *See id.*

¶ 15 On September 12, 1977, the plaintiff was involved in an automobile accident. *See id.* However, the plaintiff was not insured because the defendant had not renewed the insurance policy. *See id.* As a result, the plaintiff brought suit for failure to procure a replacement insurance policy. *See id.* At trial, the jury determined that the defendant had indeed breached his duty to procure replacement insurance. *See id.*

¶ 16 On appeal, the defendants argued that both the "plaintiff and his mother knew that plaintiff would have to be covered by a nonstandard insurance policy which, before it could become effective, an application must be signed and premium paid in full." *Id.* Accordingly, the defendants argued that the "plaintiff knew that no insurance policy had ever been issued." *Id.*

¶ 17 The court concluded, however, that an "abundance of evidence" existed "from which the jury could find" that the defendant insurance agent agreed to procure replacement insurance. *Id.* Finally, the court specifically pointed out that "[t]he contract here is not that a policy of insurance had been issued but that [the defendant's] promises and actions *were the insuring agreement relied upon by the plaintiff.*" *Id.* (emphasis added).

¶ 18 *Lawrence v. Francis*, 223 Ark. 584, 267 S.W.2d 306 (1954), although dated, is also helpful. In *Lawrence*, the defendant was both a real estate agent and an insurance agent. *See id.* at 307. The plaintiff sought the defendant's services as a real estate agent to purchase 2.5 acres of land, containing a home, garage, barn, and chicken-house.

---

4. The plaintiff asserted the claim against both the insurance agent and the insurance agency, Hicks and Associates, Inc.

*See id.* Following his purchase, the plaintiff inquired of the defendant regarding the acquisition of insurance for his newly acquired property. *See id.*

¶ 19 At trial, plaintiff testified that he had the following conversation with defendant:

> Plaintiff: [I] asked [defendant] at that time about insurance, I asked him whether he knew [if the prior home owner] had any insurance on the property, and [defendant] said he didn't know. . . . I said, will you see the [former owner] and find out if he has insurance and how much and if you can settle at sufficient coverage will you see if he can transfer it to me and I will pay the premium. If you don't consider it sufficient premium, I want insurance, because I want full coverage.
>
> . . . .
>
> Plaintiff: [I] said, "and you [defendant] will take care of insurance?" and he said, "Yes, yes," so I considered the insurance would be taken care of, being as he was an insurance agent—in that business— and I had told him that I wanted full coverage.

*Id.*

¶ 20 The conversation between the two occurred on July 17th, and on August 31st a fire destroyed all of the buildings on the plaintiff's property. *See id.* The plaintiff learned of the fire on September 7th and contacted the defendant regarding insurance coverage. *See id.* The defendant, however, had not procured insurance for the property. *See id.* at 307–08. The defendant told the plaintiff that he could not procure insurance for the property because he did not know the specific amount that the plaintiff had intended to insure the property. *See id.* at 308. The defendant's comment came despite the plaintiff's earlier statement that he wanted "full coverage" on the property. *Id.*

¶ 21 The matter was ultimately brought before a jury, which found that defendant had "fail[ed] to obtain insurance on property in accordance with an agreement." *Id.* at 306–07. On appeal, the Arkansas Supreme Court concluded that an agreement to procure insurance existed between plaintiff and defendant, based upon their prior conversation, and that "[defendant] failed entirely to exercise reasonable care to perform his agreement with [plaintiff] as to insurance." *Id.* at 309.

¶ 22 Further, the court explained that "[the defendant], as a real estate agent, had a commission coming from completing the sale, as well as his profit from writing insurance, constituted a sufficient consideration to support his promise to [the plaintiff] to 'see about insurance.'" *Id.* at 308. The court also explained that supporting testimony from another insurance agent regarding the plaintiff's request "was a sufficient instruction to any insurance agent to *bind* the risk and extend credit for the coverage." *Id.*

¶ 23 Finally, in *Caddy v. Smith*, 129 Or. App. 62, 877 P.2d 667 (1994), the Oregon Court of Appeals reversed a trial court's decision granting summary judgment and dismissing the plaintiff's claim for negligently failing to procure a policy of insurance. *See id.* at 668. In *Caddy*, the plaintiffs were building their own home and spoke with one of the defendant's employees regarding insurance coverage for potential liability related to the construction of the house. *See id.* One of the plaintiffs indicated that he had the following conversation with the defendant's employee:

> I told her that I need some insurance, and she said okay. And I said I need the usual kinds of things in case it burns to the ground, in case this and that in various stages of construction and there are two specific things I want covered. And she said okay. And I said, "There are a lot of people wandering in and out of my house, . . . and in case one of those people falls down, . . . I want it taken care of." She said okay. I said, "there are a lot of people wandering out there working on the job and I don't want any liability as far as any of those people are concerned." And she said, . . . "Who's the contractor?" I said, "Well, I don't know." . . . And she said, "Well who's paying the bills?" And I said, "Well I am." [Following another exchange of questions between the two concerning the particulars of the house, the defendant's employee concluded:] "Okay,

I'll take care of it for you." And I said "Okay. Thanks. Let me know how much it is and I'll drop by a check."

*Id.*

¶ 24 The defendant procured a standard homeowner's insurance policy for the plaintiffs. *See id.* The insurance policy excluded workers' compensation coverage. *See id.* During construction of the house, a worker was injured and subsequently sought workers' compensation benefits. *See id.* at 669. The Workers' Compensation Board determined that the plaintiff homeowners were the injured worker's employers, and that the "plaintiffs were noncomplying employers who were responsible for paying for the injuries." *Id.*

¶ 25 The plaintiffs subsequently brought a negligence claim against the defendant for failing to procure workers' compensation coverage and for failing to inform the plaintiffs that they needed that coverage. *See id.* The trial court dismissed the plaintiffs' claim on summary judgment. *See id.*

¶ 26 On appeal, the court reversed the trial court's ruling. *See id.* at 670. The court explained that although the plaintiffs did not directly ask for workers' compensation coverage, the plaintiff specifically requested insurance to cover " 'any liability' " for those who were " 'working on the job.' " *Id.* at 669. Further, the defendant's employee "asked a number of questions about whether [the] plaintiff was the contractor and whether the workers had their own insurance, and then assured plaintiff that [the] defendant would take care of that request." *Id.* The court concluded: "That testimony, viewed in the light most favorable to plaintiffs, reasonably supports a finding that plaintiffs provided sufficient information to defendant to give rise to a duty to procure workers' compensation insurance." *Id.*

¶ 27 Here, similar to *Caddy*, we must decide if the facts taken in the light most favorable to Harris preclude summary judgment. First, Harris and Albrecht had an ongoing, eight-year business relationship, during which Albrecht procured a multitude of insurance policies for Harris. Second, the parties conducted nearly all of their business transactions via telephone, and, according to Harris, "rarely met face-to-face, if ever." Harris also indicated that the two men talked on the telephone "every couple of months." Third, Harris indicated that the two men " 'rarely' discussed the particulars of the various insurance coverages Harris sought to obtain from Albrecht." Finally, and most importantly, Harris told Albrecht that he wanted to place business coverage on his office and its contents, and, in response, Albrecht replied that he would take care of it and that he would come out and look at the equipment.

¶ 28 We conclude that the facts viewed in a light most favorable to Harris, namely the conversation between the parties, their long-standing business relationship, and the nature with which the parties conducted their business, necessarily precludes summary judgment.[5]

¶ 29 The trial court's order granting summary judgment is therefore reversed, and we remand to the trial court for further proceedings consistent with our decision.[6]

¶ 30 I CONCUR: PAMELA T. GREENWOOD, Judge.

---

5. The dissent argues that we have failed to apply the third element set forth in *Bonner*, which requires a determination as to whether the agent's actions warranted an assumption by the client that he was properly insured. *See Bonner v. Bank of Coushatta*, 445 So.2d 84, 87 (La.Ct. App.1984). We are reluctant at this stage of the litigation, as an appellate court, to make such a determination, which we believe is a proper question for the trier of fact.

6. The dissent concludes that "there was no agreement between the parties sufficiently specific to create either a contract to procure insurance or a duty to do so." However, what this court was called upon to decide was whether the facts taken in the light *most favorable* to Harris preclude summary judgment. Whether a contract to procure insurance or a duty to procure a policy of insurance ultimately exists, are questions of fact best left to the trier of fact. In sum, we do not decide today that a contract or a duty exists, merely that Harris has presented a genuine issue of fact as to whether either exists, which was necessary to satisfy the hurdle of summary judgment.

Finally, we believe that the cases relied upon by the dissent do not support its ultimate conclusion. Indeed, in *Lewis v. Pike*, 663 P.2d 91 (Utah

DAVIS, Judge (dissenting):

¶ 31 Because there was no agreement between the parties sufficiently specific to create either a contract to procure insurance or a duty to do so, I must dissent. *See* 3 Lee R. Russ & Thomas F. Segalla, Couch on Insurance §§ 46.65 at 46–96, 46.68 at 46–99 (3d ed.1996); *see also Riddle–Duckworth, Inc. v. Sullivan,* 253 S.C. 411, 171 S.E.2d 486, 491 (1969) (stating burden is on plaintiff to demonstrate "with reasonable certainty the terms and conditions of the agreement" to procure insurance, and for a valid contract to procure, there must be "sufficient information provided upon which to procure the policy"). This case was appropriately disposed of by summary judgment because whether a legal duty exists is a question of law and whether a contract has been formed, based on a given set of facts, is also a question of law. *See Ferree v. State,* 784 P.2d 149, 151 (Utah 1989) (stating whether a duty exists is "entirely a question of law to be determined by the court"); *Weber v. Springville City,* 725 P.2d 1360, 1363 (Utah 1986) (same); *Nunley v. Westates Casing Servs., Inc.,* 1999 UT 100,¶ 17, 989 P.2d 1077 ("Whether a contract has been formed is ultimately a conclusion of law . . . .").

¶ 32 The majority opinion misses the mark for three related reasons. First, the majority misapprehends the appropriate import of the prior dealings between the parties. Second, the cases relied on by Harris and the majority are easily distinguishable from the facts and inferences we have here, even when viewed in the light most favorable to Harris. Finally, the majority fails to analyze whether or not Harris's reliance on the purported promise by Albrecht was reasonable.

¶ 33 The majority notes that "Harris and Albrecht had an ongoing, eight-year business relationship," *ante* at ¶ 27, and goes to great pains to point out how the two men conducted themselves during these transactions. This would be important if the past dealings helped to supply some of the missing terms necessary to procure an insurance policy on Harris's business. *See Hamacher v. Tumy,* 222 Or. 341, 352 P.2d 493, 498 (1960) (noting that prior policies entered into by the parties could be relied on to supply missing terms necessary to enable agent to procure insurance). However, that is not the case here. All of the past dealings between the two men regarding insurance matters dealt with automobiles, boats, and similar items that have a ready market and have easily ascertainable values and standard insurance coverages—unlike a business. The past dealings between the parties do not help define what the terms of the alleged contract to procure insurance were. In my view, the prior history between the parties cannot be relied on to fashion a contract to procure insurance that never existed in the first place due to an almost total lack of agreed upon terms.

¶ 34 Second, the three cases primarily relied on by the majority, *Lawrence v. Francis,* 223 Ark. 584, 267 S.W.2d 306 (1954), *Caddy v. Smith,* 129 Or.App. 62, 877 P.2d 667 (1994), and *Massengale v. Hicks,* 639 S.W.2d 659 (Tenn.Ct.App.1982), are all inapposite. In all of those cases, the agent knew, or should have known, exactly what was needed to be covered due to either past dealings with the

1983), summary judgment was proper because (1) the plaintiffs expressly told the defendant "that they would *later* contact him and inform him of their decision as to whether they wanted joint insurance," *id.* at 92 (emphasis added); (2) the parties *never* spoke, either face to face or by telephone, about the defendant procuring an insurance policy after the plaintiffs had initially declined to pursue that policy, *see id.;* and (3) the parties had no prior dealings. *See id.* Accordingly, these facts are drastically different from those we face today.

Moreover, the same can be said for *Stockberger v. Meridian Mutual Insurance Co.,* 182 Ind.App. 566, 395 N.E.2d 1272 (1979). In *Stockberger,* as in the present matter, the parties had numerous prior dealings and expectations that flowed from those dealings. *See id.* However, in *Stockberger,* the plaintiff "was aware that he had not provided [the defendant] with specific information to effectuate the [insurance] transfer," which he had always done in the past. *Id.* at 1279. The plaintiff had also not received a confirmation from the defendant that the insurance was transferred, which was also customary in their prior dealings. *See id.*

Here, taking the facts in a light most favorable to Harris, there is nothing to suggest that this dealing or the expectations that flowed from it were any different from their past dealings. The two had conducted business in this fashion in the past. While insuring Harris's business is different than that of insuring his home and vehicles, Harris has "established a pattern of conduct from which a contract *could* be implied." *Id.* at 1280 (emphasis added). And, at this stage of the litigation Harris need do nothing more.

plaintiff or from information specifically provided by the plaintiff.

¶ 35 *Hicks* is an automobile renewal case; the policy was already written and all that had to be done was to renew it. *See id.* at 660. In addition, the plaintiff and his mother contacted the agent a total of seven times in order to obtain the insurance. *See id.*

¶ 36 *Francis* is to the same effect. There, the insurance agent was also the realtor who sold the plaintiff the subject property, *see Francis*, 267 S.W.2d at 307, and thus, the agent knew exactly what needed to be insured. Moreover, there was already a policy written in the former owner's name; all that was asked of the agent was to switch it over to the plaintiff. *See id.* Thus, the risk to be insured against, the premium, and the property at issue all were known to the agent or easily ascertainable from the prior policy.

¶ 37 *Caddy* also is unlike this case. There, the risk to be insured against and subject property were specifically described by the plaintiff to the agent. *See Caddy*, 877 P.2d at 668–69. The two cases would be analogous only if Harris had specifically told Albrecht he wanted to insure against fire and then itemized the property to be protected and assigned it a value.

¶ 38 Finally, the majority fails to apply the third element set forth in *Bonner v. Bank of Coushatta*, 445 So.2d 84, 87 (La.Ct.App.1984) ("the actions of the agent warranted an assumption by the client that he was properly insured"). In order to recover on either theory—the contract to procure or the breach of a duty to procure—Harris must demonstrate that it was reasonable for him to rely on the agent to obtain the policy. *See* Couch on Insurance, *supra* § 46.72 at 46–107. Harris did not act reasonably in relying on Albrecht's purported statement that he would "take care of it" when Harris had but one brief conversation regarding an unknown and amorphous business policy and, even though he admits having spoken with Albrecht on other occasions, never followed up to see if the coverage had been arranged, never received a bill over the course of several months, and Albrecht never came out to see the property to be insured.

¶ 39 In my view, this case is closer to *Lewis v. Pike*, 663 P.2d 91, 92–93 (Utah 1983)

(affirming a grant of summary judgment for the defendant because there was no "specific order for insurance"), than any of the three cases relied on by the majority. Here, the actions of Harris amounted to little more than an inquiry about insurance, *see id.* at 92, and fall far short of creating a contract to procure insurance or creating a duty to do the same. *See Stockberger v. Meridian Mut. Ins. Co.*, 182 Ind.App. 566, 395 N.E.2d 1272, 1279 (1979) (stating the agent's liability "could not arise unless the agent had sufficiently definite directions from the principal to enable the agent to consummate the final insurance contract," and noting that there is a corresponding duty on the part of the insured to provide the agent with necessary information); *Boston Camping Distrib. Co. v. Lumbermens Mut. Cas. Co.*, 361 Mass. 769, 282 N.E.2d 374, 376 (1972) (holding statement by plaintiff to agent that he wanted coverage from "A to Z, second to none" was not a contract to procure and merely expressed an intent to obtain insurance); *Wallis v. Liberty Mut. Ins. Co.*, 465 S.W.2d 422, 425–26 (Tex.Civ.App.1971) (reversing a judgment for plaintiffs against agent and stating that instructing the agent to procure insurance was not enough to give rise to a duty to procure insurance, it merely indicated "a desire on the part of plaintiffs to be insured"). Accordingly, I respectfully dissent.