2004 UT 13

**Ken HARRIS, Plaintiff and Respondent,**

v.

**Rick ALBRECHT; Rick Albrecht Insurance Agency, Inc.; and State Farm Fire & Casualty Company, Defendants and Petitioner.**

No. 20020370.

Supreme Court of Utah.

Feb. 6, 2004.

Lynn C. Harris, Provo, Ryan M. Harris, Salt Lake City, for respondent.

Paul M. Belnap, Byron G. Martin, Peter H. Barlow, Salt Lake City, for petitioner.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 The instant case is one of first impression in which we determine when an insurance agent creates a contract to procure insurance or when a duty to procure insurance arises. Petitioner Rick Albrecht seeks review of the Utah Court of Appeals' reversal of the trial court's grant of summary judgment in Albrecht's favor. *Harris v. Albrecht*, 2002 UT App 98, 46 P.3d 241.

## BACKGROUND

¶ 2 The moving party is entitled to summary judgment if the record "show[s] that there is no genuine issue as to any material fact." Utah R. Civ. P. 56(c). "In reviewing a grant of summary judgment, we review the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Houghton v. Dep't of Health*, 2002 UT 101, ¶ 2, 57 P.3d 1067

(internal quotation omitted). We recite the facts accordingly.

¶ 3 Albrecht is a Utah-licensed insurance agent employed by Rick Albrecht Insurance Agency, Inc. He sells policies exclusively for co-petitioner, State Farm Fire & Casualty Company (State Farm). Ken Harris earned his architecture license in 1981, formed Harris and Olsen Architects in 1987, changing the firm's name to Ken Harris Architects in 1990. Harris' business grew considerably after 1990, and he made substantial investments in equipment and office furnishings from 1995 to 1997. By the summer of 1997, the scope of the improvements prompted an interest in acquiring business insurance.

¶ 4 In 1989, Albrecht and Harris commenced a business relationship when Harris obtained an auto insurance policy from State Farm through Albrecht. Albrecht continued procuring various insurance policies for Harris, including an umbrella policy and coverage for his home, boat and Recreational Vehicle. They conducted most of their business over the telephone, talking every couple of months. A conversation generally consisted of requests from Harris for insurance coverage, followed by fulfillment of each request by Albrecht, without detailed discussion of different types of coverages.

¶ 5 In mid-summer 1997, Harris contacted Albrecht to obtain business insurance for his architectural firm. He told Albrecht "to place business and fire coverage on [his] equipment and the contents [of his office]." Harris alleged that Albrecht responded by saying that "he would take care of [it]," and "he would come out and look at [the] equipment."

¶ 6 On December 31, 1997, a fire destroyed the building housing Harris' architectural firm. The losses totaled $1,143,855.50. Harris attributed $940,000 to the loss of architectural plans and other valuable papers. While watching the building burn, Harris called Albrecht and asked: "You placed that [business] coverage we talked about, didn't you?" Albrecht replied: "We talked about it Ken, but we never did anything about it."

¶ 7 Harris brought claims against Albrecht, Rick Albrecht Insurance Agency and State Farm for breach of a contract to procure insurance and negligent failure to procure insurance. The trial court granted Albrecht's motion for summary judgment, and the court of appeals reversed. *Harris,* 2002 UT App 98 at ¶ 1, 46 P.3d 241.

## ANALYSIS

### I. STANDARD OF REVIEW

¶ 8 On certiorari, "we review the decision of the court of appeals and not that of the trial court." *Collins v. Sandy Bd. of Adjustment,* 2002 UT 77, ¶ 11, 52 P.3d 1267 (internal quotation omitted). Furthermore, "we review the decision of the court of appeals for correctness." *Id.* (internal quotation omitted).

### II. DUTY AND CONTRACTS AS A MATTER OF LAW

¶ 9 Whether an insurance agent breached a contract to procure insurance or whether the agent had a duty to procure insurance are matters of first impression for this court. The court of appeals erred when it concluded that "[w]hether a contract to procure insurance or a duty to procure insurance ultimately exists [are] questions of fact best left to the trier of fact." *Harris,* 2002 UT App 98 at ¶ 29 n. 6, 46 P.3d 241. This court's precedent establishes that whether a contract or duty exists is a matter of law. *Ferree v. State,* 784 P.2d 149, 151 (Utah 1989) (stating whether a duty exists is "entirely a question of law to be determined by the court"); *Nunley v. Westates Casing Servs., Inc.,* 1999 UT 100, ¶ 17, 989 P.2d 1077 ("Whether a contract has been formed is ultimately a conclusion of law. . . ."); *Weber v. Springville City,* 725 P.2d 1360, 1363 (Utah 1986)(same). Because Albrecht accepted the facts asserted by Harris for purposes of summary judgment, the court of appeals should have decided whether a contract or a duty to procure insurance existed as a matter of law.

#### A. Contract to Procure Insurance

¶ 10 The formation of a contract requires a meeting of the minds. In *Bulla v. Donahue,* 174 Ind.App. 123, 366 N.E.2d 233, 236 (1977), the court stated

Where a person seeks to enter into a contract of insurance with an insurance company or its agent it is understood that the negotiations will not ripen into a contract until the parties arrive at an agreement as to all of the elements which are essential to an insurance contract, including the subject matter to be covered, the risk insured against, the amount of the indemnity, the duration of the coverage and the premium. *Hamacher v. Tumy*, 222 Or. 341, 352 P.2d 493, 497 (1960). We conclude that no contract of insurance existed between Harris and Albrecht. They did not discuss any of the elements essential to an insurance contract except that Harris "wanted business and fire coverage on [the] equipment and the contents" of his architectural business. There was no mention, except fire, of the types of risks Harris wanted covered, the amount of indemnity, the duration of coverage, or the premium. Therefore, there was no meeting of the minds on which to base a contract of insurance.

 ¶ 11 However, the issue here is not whether an oral contract of insurance existed but rather whether an oral contract to procure insurance existed.

In entering into a contract to procure insurance, obviously the owner is seeking the same ultimate objective, that is, a contract of insurance, but the performance for which he bargains is the services of the insurance agent in obtaining the best possible terms consistent with the owner's insurance needs. Such a contract could arise even though the agent was given the authority to ascertain some of the facts essential to the creation of the ultimate contract of insurance, such as the appraised value of the property to be covered or the most advantageous premium.

... Obviously, liability for failure to procure insurance could not arise unless the agent had sufficiently definite directions from his principal to enable him to consummate the final insurance contract.... [A]n *express* agreement is not necessary; the scope of the risk, the subject matter to be covered, the duration of the insurance, and other elements can be found by implication.

*Id.* (emphasis in original). Therefore, a contract to procure insurance may arise when the agent has definite directions from the insured to consummate a final contract, when the scope, subject matter, duration, and other elements can be found by implication, and when the insured gives the agent authority to ascertain some of the essential facts. *Id.*

¶ 12 In *Hamacher*, the plaintiff, a sawmill owner, contacted the defendant insurance agent after substantial improvements to his sawmill. *Id.* at 495. During the meeting at the plaintiff's office, the insurance agent suggested the plaintiff increase the insurable value from 90 percent to 95 percent. *Id.* The sawmill owner said, "he thought [the increased coverage] was a good idea; he would do that." *Id.* At the conclusion of the meeting, the parties agreed to reconvene their conference the following morning once the agent had an opportunity to review the appraisal and "determine the insurable value of [the plaintiff's] property." *Id.* at 496. The meeting did not occur, and a fire seriously damaged the sawmill the next day. *Id.*

¶ 13 The court found the existence of a contract to procure insurance because the sawmill owner already had policies with the agent, the additional coverage was based upon existing policies, the appraisal gave the agent the requisite information to add the additional coverage, and the parties specifically discussed different fire coverages. *Id.* at 498.

 ¶ 14 In the present case, Albrecht did not have sufficiently definite directions from Harris to consummate the final insurance contract. Harris requested fire coverage for the contents and equipment of his business and also asked for business insurance. In order for Albrecht to procure business insurance, he needed to know the type of coverage Harris desired, such as loss of income, earthquake, employee dishonesty, money and securities, and theft. Depending on the types of coverage desired, Albrecht potentially needed to know the value of all furniture and equipment, accounts receivable, and building improvements, as well as the amount of deductible Harris wanted, why Harris' business had never been insured,

when Harris wanted the policy to go into effect, whether there had been any prior losses, and, crucially, the value of architectural documents and other valuable papers. Albrecht had none of this information because all of Harris' previous policies were personal. Furthermore, Harris has not cited any instance where a court has held that an insurance agent must procure part of an insurance policy while waiting for the remaining sections to be sufficiently identified.

¶ 15 For similar reasons, Albrecht could not identify "the scope of the risk, the subject matter to be covered, the duration of the insurance, and other elements ... by implication." *Id.* at 497. Although Harris requested fire insurance for the contents and equipment in his business, too many variables remained. The auto, home, boat and RV policies offered no information from which Albrecht could determine the missing terms of the contract.

¶ 16 Additionally, Harris failed to give authority for Albrecht to ascertain some of the essential facts. He merely made a general request for insurance, which falls short of giving Albrecht authority. Harris was required to give explicit instructions to Albrecht rather than make a blanket request for insurance. Giving authority to the agent requires more than such a blanket request.

¶ 17 The *Hamacher* court also noted that "[p]revious dealings between the parties are the strongest and, in most instances, the most definite basis for implying terms of a contract." *Id.* at 498 (quotation omitted). In *Hamacher*, that made sense because the essential terms of the contract were clear based on the parties' prior dealings. However, in this case, the court of appeals relied too heavily on Harris' and Albrecht's prior dealings in concluding that a contract to procure insurance existed. Prior dealings are supportive only to the degree that they supply essential elements from which the agent can complete an insurance contract. Harris' personal insurance policies provided no information from which Albrecht could have inferred the necessary and missing terms for a business policy.

¶ 18 Albrecht lacked sufficient information from which the terms of a contract of insurance or a contract to procure insurance could be implied. The expression of a desire to procure business insurance followed by an oral affirmation of that desire is not enough to create a contract to procure insurance. Creation of a contract to procure insurance requires that the agent know or have ready access to the information needed to procure the insurance or be able to imply the terms from prior dealings. If the insured gives authority to the agent to obtain some information, he must do so explicitly.

### B. Duty to Procure Insurance

¶ 19 The second issue before us is whether Albrecht assumed a duty to procure insurance when he allegedly told Harris "he would take care of that," and that he would come out and look at "the equipment" after Harris called Albrecht and told him that he "wanted business and fire coverage on [the] equipment and the contents" of his architectural business.

¶ 20 One standard for determining whether an insurance agent has assumed a duty to procure has been stated as follows:

[A] court must look to the conduct of the parties and the communications between them, and more specifically to the extent to which they indicate that the agent has acknowledged an obligation to secure a policy. Where an insurance agent or broker promises, or gives some affirmative assurance, that he will procure or renew a policy of insurance under circumstances which lull the insured into the belief that such insurance has been effected, the law will impose upon the broker or agent the obligation to perform the duty which he has thus assumed. Further, if the parties have had prior dealings where the agent customarily has taken care of the customer's needs without consultation, then a legal duty to procure additional insurance may arise without express and detailed orders from the customer and acceptance by the agent. . . . [A]n application from the customer is sufficient to support a duty to procure insurance. A bare acknowledgment of a contract to protect the insured

against casualty of a specified kind until a formal policy can be issued is enough. . . .

*Alford v. Tudor Hall and Assocs., Inc.*, 75 N.C.App. 279, 330 S.E.2d 830, 832–33 (1985) (quotations and citations omitted).

¶ 21 In *Alford*, the plaintiff contacted an employee of the defendant about acquiring insurance on a house under construction. The parties discussed the value of the property, and the defendant's employee agreed to prepare several quotes and call the plaintiff that afternoon. No one called the plaintiff, and his house burned down several days later. In holding that the employee had no duty, the court noted the history of the parties' prior dealings, but emphasized that their discussion prior to the fire left open the question of how much coverage Alford desired. *Id.* at 833. The employee also did not "inform or assure" Alford that his new house had insurance. *Id.*

¶ 22 The *Alford* standard would ask us to determine whether Albrecht "acknowledged an obligation to secure a policy," thereby creating a duty to procure insurance. *Id.* at 832. Factors that indicate a duty include (1) whether Harris gave Albrecht an application, (2) whether Albrecht made a bare acknowledgment of a contract covering a specific kind of casualty even though all the terms had not been settled, (3) whether Albrecht made promises to procure insurance that lulled Harris into believing a policy had been procured, and (4) whether there were prior dealings where Albrecht took care of Harris' needs without consultation. *Id.* at 832–33.

¶ 23 The final three factors are relevant to the instant case, requiring a close look at the language used during Albrecht's and Harris' telephone call. Albrecht said "he would take care of that, he would come out and look at the equipment." This statement is not a bare acknowledgment of an obligation to procure insurance because the statement that "he would come out and look at the equipment" indicated that Albrecht needed to gather more information or do other work before procuring a policy. A bare acknowledgment occurs when an agent confirms coverage pending the issuance of a formal policy. *Id.* at 833.

¶ 24 Albrecht's comments failed to rise to the level of a promise to procure insurance and were insufficient to lull Harris into believing a policy had been procured because they lacked the requisite specificity. An agent must affirmatively assure the insured that a policy will be procured or has been procured. Harris argues that their prior dealings lulled him into believing Albrecht would procure insurance. Rather, Harris lulled himself into believing he had an insurance policy. No reasonable and experienced businessperson would believe the conversation here gave rise to a duty to procure insurance when considered in light of its brevity and the lack of any specificity for such a complex and customized type of policy. Even if Albrecht's comments lulled Harris into believing Albrecht would procure a policy, the fact that Harris never completed an application, never received a bill or policy, and was never contacted by Albrecht in the five months after the conversation should have put Harris on notice that he did not yet have a policy. Failing to examine one's mail is not a defense.

¶ 25 The *Alford* court noted that "the evidence fail[ed] to show that the parties had a course of dealing whereby the defendant would obtain insurance for plaintiffs without their approval as to the amount of coverage." *Id.* The plaintiff had a history of reviewing policies before deciding the amount of insurance to purchase. *Id.* The fact that Harris had a history of leaving the details to Albrecht does not affect the outcome because Harris desired a policy quite distinct from past policies. Instead of seeking an additional personal policy for home or auto, Harris desired a business policy.

¶ 26 A significant distinction exists between business insurance policies and personal insurance policies. The ease of procuring an auto or homeowner's policy contrasts sharply with the customization required for a business policy. *See supra* Part II.A. The information available to Albrecht at the time of the telephone conversation did not provide the essential elements needed to create an insurance contract. A policy for an architectural business requires more customization than one for a simple retail business. Valu-

able papers, for which Harris now seeks to recover damages, were beyond Albrecht's authority to bind State Farm, and State Farm would likely have required Harris to take certain loss-reduction measures regarding the safe-keeping of those papers before binding them. It was impossible for Albrecht to provide Harris with a "standard business policy."

¶ 27 Albrecht did not acknowledge an obligation to secure an insurance policy for Harris because Albrecht did not: (1) take an application for insurance; (2) make a bare acknowledgment against casualty of a specific kind; (3) lull Harris into believing he would procure insurance or that a policy had been procured; or (4) have a pattern of prior dealings of the type sufficient to impose a duty to procure insurance. At most, Albrecht lulled Harris into believing that he would come out and look at his business.[1]

¶ 28 The court of appeals cited several cases supporting its decision. We agree with Judge Davis' dissent, however, finding those cases distinguishable from the instant case because in each the agent had all the information needed to procure a policy. See Lawrence v. Francis, 223 Ark. 584, 267 S.W.2d 306, 309 (1954) (finding a duty existed when the insurance agent, who was also the real estate agent for the home buyer, failed to procure a new policy or transfer the existing policy after closing on the home); Caddy v. Smith 129 Or.App. 62, 877 P.2d 667, 669 (1994) (finding a duty existed where the agent failed to add liability coverage to a standard homeowner's policy after a detailed conversation about coverage); Massengale v. Hicks, 639 S.W.2d 659, 660 (Tenn.Ct.App. 1982) (finding a duty existed where the insured sought an auto policy renewal and spoke with the agent on several occasions).

¶ 29 The instant case is similar to Lewis v. Pike, where the court granted summary judgment against a plaintiff who failed to place a "specific order for insurance." 663 P.2d 91, 92–93 (Utah 1983). Likewise, in Stockberger v. Meridian Mutual Insurance Co., , the court stated that no liability arose unless the plaintiff gave sufficient directions to enable the agent to create a final contract. 182 Ind.App. 566, 395 N.E.2d 1272, 1279 (1979). Harris failed to give Albrecht sufficient instructions to impose a duty to procure insurance, and the missing terms could not be implied from the parties' prior dealings. See Lewis, 663 P.2d at 92; Boston Camping Distrib. Co. v. Lumbermens Mut. Cas. Co., 361 Mass. 769, 282 N.E.2d 374, 376 (1972) (holding a request for coverage from "A to Z, second to none" expressed only an intent to obtain insurance); Wallis v. Liberty Mut. Ins. Co., 465 S.W.2d 422, 425–26 (Tex.Ct.App. 1971) (noting that an agent "instructed" by the insured to procure insurance did not assume a duty). Here, Harris merely requested insurance and expressed a desire to procure insurance.[2]

## CONCLUSION

¶ 30 A contract to procure insurance may arise when the agent has definite directions from the insured to consummate a

---

1. Other jurisdictions apply similar standards to determine whether a duty to procure insurance existed. For example, in Bonner v. Bank of Coushatta, the court explained:

 In order to recover for loss arising out of the failure of an insurance agent to obtain insurance coverage, the plaintiff must prove:
 (1) an undertaking or agreement by the insurance agent to procure insurance;
 (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and
 (3) the actions of the agent warranted an assumption by the client that he was properly insured.

 445 So.2d 84, 87 (La.Ct.App.1985) (citation omitted).

2. The nature of the losses here underscores the reason summary judgment was appropriate. The most basic business policy includes $5,000 of protection for valuable papers. Albrecht only had binding authority up to $25,000 for valuable papers, and Harris could not have received such coverage without taking loss-reduction measures. It is also possible that State Farm would not have bound the policy or that Harris would not have insured his valuable papers for as much as he now claims. The latter is of particular importance because Harris offered his investment in new equipment as the reason for obtaining business insurance, as opposed to protecting valuable papers, which presumably increased in value throughout his career in contrast to the recent equipment purchases. In light of these unknowns, a jury determination of damages would be purely speculative.

final contract; when the scope, subject matter, duration, and other elements can be found by implication; and when the insured gives the agent authority to ascertain some of the essential facts. A duty to procure insurance may arise when an agent accepts an application; makes a bare acknowledgment of a contract covering a specific kind of casualty; lulls the other party into believing a contract has been effected through promises; and has taken care of the insured's needs without consultation in the past.

¶ 31 The court of appeals erred when it failed to determine that the telephone conversation between Albrecht and Harris created neither a contract nor a duty to procure insurance. We reverse.

¶ 32 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM'S opinion.